JOHN F. McCARTHY and Others v. WEARE COMMISSION COMPANY.[1]

June 27, 1902.

Nos. 13,042—(128).

**Account Stated.**

Action upon an account stated which was based upon certain alleged stock transactions whereby the defendant bought and sold certain stocks for the plaintiffs as their broker and upon their orders. The defendant, by its manager, reported the orders executed in each case. *Held* that, as to the plaintiffs, the orders must be deemed to have been executed, and that the statute of frauds does not apply to them.

[1] Reported in 91 N. W. 33.

### Gambling Venture.

A contract for the sale of goods which the seller can only acquire by purchase is a gambling venture, where the parties do not intend any actual purchase and delivery of the goods to fill the contract, but are merely risking the difference between the contract price and the market price at a future day. The illegal intent of one of the parties will not avail unless the other party knows, or ought to know, of such illegal purpose.

### Charge to Jury.

Rule applied, and *held* that the instructions of the trial court in this case on the subject were substantially correct.

### Rulings of Court.

Certain rulings of the court as to the reception and rejection of evidence, and as to refusing certain requests to charge, considered, and *held* not to be reversible error.

Action in the district court for St. Louis county to recover $5,611.25 and interest upon an account stated. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*J. L. Washburn* and *W. D. Bailey*, for appellant.

*Searle & Spencer* and *L. C. Harris*, for respondents.

START, C. J.

Action on an account stated.

The complaint alleged that the defendant was a corporation engaged in the business of buying and selling grain and stocks, and for that purpose maintained a branch office in the city of Duluth, which was at all times herein stated in charge of George Rupley as its manager, and, further, that between February 1 and May 10, 1901, the plaintiffs and defendant had mutual financial dealings, and on the day last named an account was stated between them, and a balance of $5,611.25 was found to be due plaintiffs from defendant, which it agreed to pay, but has not. The answer alleged that defendant was a broker buying and selling grain, stocks, and bonds on commission, and maintained during the times stated an office at Duluth, in charge of George Rupley, for the purpose of receiving and forwarding orders to its Chicago office for the pur-

chase or sale of such articles, and that he was also engaged in such business upon his own account, which the plaintiffs knew. The answer denied the allegations of the complaint, and alleged, in effect, that the transactions and statement of account alleged in the complaint were had and made, if at all, between the plaintiffs and George Rupley on his own account, with which the defendant had nothing to do, and that all such transactions were gambling contracts. The reply put these allegations of the answer in issue. These issues were submitted to the jury, and a verdict returned for the plaintiffs for $5,725.34, and the defendant appealed from an order denying its motion for a new trial.

The evidence on the part of plaintiffs tended to show that during the times stated in the complaint they gave to the defendant's manager, as such, at Duluth, various orders to buy and sell for them certain stocks,—among others, that of the Northern Pacific Railway Company, amounting in the aggregate to one hundred twenty-five shares, which constituted the real controversy in this case. The defendant's manager, upon receiving an order to buy, would report to the plaintiffs that he had done so. His reports, except as to dates, number of shares, and price and description, were in the form following:

"All Orders Executed According to the Rules of the Exchange Where Made.
"To McCarthy Bros.,
        from GEORGE RUPLEY, Manager,
                "Weare Commission Company.
                                "Duluth, Minn., 3–22, 1901.
    "We have bought for your account this day:

| Quantity. | Delivery. | Articles. | Price. | Remarks. |
|---|---|---|---|---|
| 50 | | N. P. | 88⅝ | |

"All transactions made by us contemplate the actual receipt and delivery of the property, and payment therefor.
"On all marginal business we reserve the right to close transactions when margins are running out, without giving further notice."

The evidence further tends to show that the plaintiffs gave to

such manager three separate orders for the purchase of shares of Northern Pacific stock, amounting in the aggregate to one hundred twenty-five shares, the last of which was given April 22, 1901, and that the defendant reported, in the form stated, that he had executed the orders, and had purchased the stock, and that on May 7, 1901, the plaintiffs ordered such manager to sell the one hundred twenty-five shares, and he reported, in substantially the same form as he did the purchase, that he had sold the stock for $148 per share; that three days thereafter the plaintiffs and such manager met, and the accounts growing out of such purchase and sale of stocks were settled, and the balance stated and agreed upon as alleged in the complaint. The evidence on the part of the defendant tended to show that none of the orders so given to the manager were ever transmitted by him to the defendant in the name of the plaintiffs, and that none of them came to its knowledge until after the time of the alleged statement of account, but that he did buy the stock in his own name through the defendant and sold it prior to May 7, 1901, and, further, that no note or memorandum in writing subscribed by any party was made of any of the orders, except the reports of the manager, nor was any part of the purchase price paid, but the plaintiffs had a credit of $5,000 with the defendant, nor were any stocks delivered to the plaintiffs.

1. The defendant's first proposition is that the alleged transactions between the parties were within the statute of frauds, and cannot be enforced.

If the plaintiffs proved the allegations of their complaint, the statute of frauds has nothing to do with this case. Their cause of action rests upon the alleged facts that they employed the defendant as their broker or agent to buy and sell for them certain stocks, that it did so, and that an accounting was had as to such agency. The plaintiffs neither bought stocks of the defendant, nor sold them to it. The action is not to enforce an executory contract, but to recover the fruits of an executed contract, and falls within the well-settled rule that the statute of frauds cannot be set up against an executed contract. Browne, St. Frauds, § 116; Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950. The defendant, however, claims that the plaintiffs' orders for purchases and sales of

stocks were never in fact executed; hence the rule stated does not apply. It is true that the defendant's manager testified on the trial that so much of the stock as he actually purchased was bought in his own name, and that he sold it out before he received the plaintiffs' orders to sell it. But the fact remains that he reported that he had executed the orders as it was his duty to do. If the reports were untrue, and he never obeyed the instructions of his principal, and he was acting in the transactions as the manager of the defendant, the latter is liable precisely as if the orders had been duly executed as reported. If the defendant is responsible in this case for the acts of its manager, as the jury by their verdict have found, and the evidence justifies, it would be a strange perversion of justice to permit it to show that the reports which it made to its principals, the plaintiffs, by its manager, were false, and that in fact it never executed the orders, and thereby enabled it to invoke the statute of frauds. It cannot now be heard to say that the plaintiffs' orders were not executed. As to the plaintiffs, they must be deemed to have been executed.

2. The defendant further claims that the alleged dealings between it and the plaintiffs were gambling contracts and void, and that the trial court erred in its instructions to the jury on this branch of the case.

The law as to the validity of contracts for the sale of personal property not in possession is well settled. A contract for the sale of goods which the seller can only acquire by purchase is a gambling venture and illegal where the parties do not intend any actual purchase and delivery of the goods to fill the contract, but are merely risking the difference between the contract price and the market price at a future day. The burden of establishing the illegality of a contract for the future delivery of goods rests upon the party who asserts it. The illegal intent of one of the parties to the contract will not alone avail to render it illegal unless the other party knows or ought to know of such illegal purpose, for, if one of the parties to the contract acts in good faith with the intention and expectation of delivering or receiving the goods, he may enforce it against the other party. Mohr v. Miesen, 47 Minn.

228, 49 N. W. 862; Benjamin, Sales, § 12. The trial court instructed the jury upon this subject, and gave to them, with others, the following instructions:

"A transaction which on its face is legitimate cannot be held void, as a wagering contract, upon a showing that one party only so understood and meant it to be. The proof must go further, and show that this understanding was mutual, and that both parties understood the transaction. The burden of proof is on the party alleging the illegality. * * * The intention and purpose of the actual seller and the purchaser must control, and if either made the contracts in good faith, and not with a view of gambling, the transactions can be enforced. If either party, however, were represented by an agent, the knowledge or understanding of the agent would probably govern the principal."

The giving of these instructions is assigned as error by the defendant, for the reason, as claimed by its counsel, that they permitted the jury to find the transactions in question to be valid, even if they found that the plaintiffs intended them as gambling contracts, if they also found that the defendant's manager did not so intend, and, further, that if such was not their intention the contracts would be legal, although the manager intended them to be wagering transactions, and they knew his intention. The instructions complained of must be read in connection with the whole charge on the subject, and particularly the following instruction:

"If you find from the evidence that the transactions upon which the plaintiffs' claim against the defendant rests * * * were not actual bona fide purchases and sales of such stocks, and that plaintiffs did not in fact intend to make actual purchases and sales of such stocks, but intended to speculate in the price of stocks, merely, and settle the difference in profit or loss, as the case might be, at some future time, * * * plaintiffs cannot recover."

If the manager intended the transactions to be merely wagering contracts, and the plaintiffs knew it or ought to have known it, they could not be purchasers in good faith, although they themselves had no such intention. A more specific instruction as to what would constitute a bona fide purchaser would have been proper, but, if counsel was of the opinion that the one given was

not sufficiently explicit, he should have asked for a more definite one. The instructions, as a whole, were substantially a correct statement of the law.

3. The court instructed the jury, in effect, that the burden was upon the plaintiffs to show that an account was stated between them and the defendant, and upon the defendant to show that, if an account was stated, it was with George Rupley, and not with it. This is assigned as error, in that it required the defendant to establish the negative of the proposition upon which the plaintiffs alone could recover. The instruction is to be interpreted from the standpoint of the judge and jury, and construed with reference to the allegations of the answer that the account stated was with George Rupley, and not with the defendant, and the evidence to the effect that the transactions in question were had between the plaintiffs and the defendant by its manager, Mr. Rupley, and that they were all within his apparent authority as such manager.

Now, the instruction complained of has reference to the allegation of the answer, and means that the burden was upon the plaintiffs to show prima facie that an account was stated with the defendant, and then upon the defendant to show that the account was stated with George Rupley, and not with it, if it sought to overcome the plaintiffs' prima facie case by such alleged fact. But in any event the instruction could not have been prejudicial to the defendant, for the evidence is practically conclusive that the transactions were had with Mr. Rupley as the defendant's manager, and not with him individually. The trial court stated to the jury that the plaintiffs claimed that the account was stated between them and the defendant, and that the defendant claimed that it was an account stated with George Rupley. This is assigned as error, because such was not the defendant's claim. If it was not, the time to have secured a correction was when the statement was made, and not assent to its correctness by silence, and raise the question for the first time on a motion for a new trial.

There were several other instructions which are assigned as error, but we are of the opinion that no substantial error was com-

87 M.—2

mitted in giving them. Error is also assigned because the court refused to give the defendant's fifth and seventh requests. They were properly refused because there was no sufficient evidence to support them.

4. The rulings of the trial court in the reception and rejection of evidence in several instances are assigned as error. Some of the rulings were technically erroneous, but none of them, nor all of them together, constitute reversible error, for it is clear from the whole record that the defendant could not have been prejudiced thereby.

We have considered all of the assignments of error discussed in the brief of appellant, and have reached the conclusion that substantial justice requires that the order appealed from be affirmed. So ordered.