**Lan C. ENGLAND, Plaintiff and Respondent,**

v.

**Eugene HORBACH, an individual, Medicode, Inc., a Utah corporation, and Does I through V, Defendants and Petitioners.**

No. 950506.

Supreme Court of Utah.

May 30, 1997.

Rehearing Denied Aug. 26, 1997.

Samuel D. McVey, Randy T. Austin, Salt Lake City, for plaintiff and respondent.

Steven G. Crockett, Steven E. McCowin, Wesley D. Felix, Steven L. Taylor, Salt Lake City, for defendants and petitioners.

DURHAM, Justice:

This case comes to us on a writ of certiorari to the court of appeals, which held that the parties had reached an accord and satisfaction of their dispute. We reverse.

In 1989, defendant Eugene Horbach orally agreed to buy 258,363 shares of Medicode stock from plaintiff Lan England at $2.75 per share, for a total purchase price of $710,-498.25. Over the course of the next ten months, Horbach made several payments to England totaling $859,599.35. Taking into account a reimbursement of $4,599.35 for certain additional expenses that England had incurred on Horbach's behalf, by September 14, 1990, Horbach had in fact overpaid England by $144,501.75.

Nevertheless, when the parties met again eight months later, on May 23, 1991, both were apparently under the mistaken impression that more money was owed on the original contract. Horbach, because of errors he attributes to his accounting department, was uncertain of the amount then due. England testified that he thought Horbach owed him an amount between $25,000 and $75,000. But England also testified that he told Horbach that the amount owed was $25,000. Horbach believed England, and the trial court found that "at the May 23rd meeting both the Plaintiff and the Defendant mistakenly believed that $25,000 remained owing under the 1989 stock purchase agreement."

Consequently, on May 23, 1991, the parties came to an agreement (the "May 23 agreement") whereby England delivered the 258,-363 shares to Horbach and Horbach gave England a post-dated check for $25,000 along with a note promising to "hold 2% of Medicode stock in trust for you [England] forever unless I have different instructions by you on disposition of that stock." But when England later asked Horbach to reconvey the promised two percent of Medicode stock, Horbach refused. Horbach argued at trial that he meant to deliver only a security interest in the two percent to secure payment of the post-dated check and that the language of the agreement was merely "an unfortunate choice of language," possibly re-

sulting from the fact that "we had a few drinks at lunch." England brought an action in the Third District Court to recover the proceeds of the shares, which by stipulation of the parties had been sold for $369,140.60. Horbach raised a counterclaim at the trial for recovery of $169,501.75, the amount that he had overpaid on the original contract.

The trial court found that the May 23 agreement was executed under a mutual mistake of fact and was therefore unenforceable. Because Horbach had already overpaid England by the time of the May 23 agreement, the court found that England had a preexisting duty to deliver the shares to Horbach. The court therefore concluded that Horbach's promise to give England an interest in two percent of the Medicode stock was without consideration. The court also granted Horbach's motion for a counterclaim and awarded him a judgment against England in the amount of $169,501.75 for overpayments under the original contract.

The court of appeals reversed the trial court. *England v. Horbach*, 905 P.2d 301 (Utah.Ct.App.1995). The court of appeals found that the May 23 agreement constituted an accord and satisfaction and found consideration for the agreement in the bargained-for settlement of the parties' uncertain claims. *Id.* at 304. The court stated that "if the parties in good faith believe there is a disputed or uncertain claim, mere settlement of the amount due and acceptance of that amount constitutes the consideration necessary to support the contract." *Id.* (citations omitted). As for the trial court's finding of mutual mistake, the court of appeals recognized that "the parties were indeed mistaken that additional money was owed under the original agreement. However," the court continued, "this mistake did not go to the terms of the parties' accord; rather it merely demonstrates their accord was indeed a compromise of a bona fide dispute which was not necessarily well-founded, but was in good faith." *Id.* at 305 (citations omitted). This court granted Horbach's petition for certiorari. 913 P.2d 749 (Utah 1996).

The petition for certiorari and the briefs of the parties indicate that we must resolve at least three issues. We must first decide whether the court of appeals applied the correct standard of review and gave proper deference to the trial court's findings of fact. Next we must determine whether the May 23 agreement was a compromise of an unsettled claim constituting an accord and satisfaction or merely the conclusion of the original contract based on mistaken assumptions about the parties' legal obligations. If the May 23 agreement did in fact constitute an accord and satisfaction, we must also decide whether the parties' mutual mistake merely goes to the terms of the original agreement or whether it invalidates any further "accord" the parties may have reached on May 23. Finally, we must decide whether the trial court erred in granting Horbach's motion to amend his pleading to conform to the evidence, thus allowing Horbach to counterclaim for overpayments to England in the amount of $169,501.75.

## I. STANDARDS OF REVIEW BEFORE THE COURT OF APPEALS AND THE SUPREME COURT

■ The court of appeals reviews the trial court's conclusions of law for correctness, and likewise this court "accord[s] no particular deference to conclusions of law ... made by ... the court of appeals, but review[s] such conclusions for correctness." *Landes v. Capital City Bank*, 795 P.2d 1127, 1129 (Utah 1990). The court of appeals may reverse a factual finding of the trial court only if it determines that the finding is "clearly erroneous," Utah R. Civ. P. 52(a), that is, if the trial court's "ruling contradicts the great weight of evidence or if a court reviewing the evidence is left with 'a definite and firm conviction that a mistake has been made.'" *Sevy v. Security Title Co.*, 902 P.2d 629, 635 (Utah 1995) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)). This court must determine in its turn "whether the court of appeals correctly decided that the trial court's ruling on this issue was clearly erroneous." *Id.*

■ Horbach argues that the court of appeals improperly set aside the trial court's finding of fact 11, in which the trial court states, "The Court finds that at the May 23rd meeting both the Plaintiff and the Defendant

mistakenly believed that $25,000 remained owing under the 1989 stock purchase agreement." In fact, the court of appeals accepted the trial court's finding that "at the May 1991 meeting, the parties were indeed mistaken that additional money was owed under the original agreement." *England*, 905 P.2d at 305. However, the court of appeals also writes that "both parties were uncertain as to the amount that remained owing on the original contract when they entered into their agreement." *Id.* This finding of uncertainty clearly ignores or overrides the trial court's finding that the parties were certain, though mistaken, that Horbach owed England $25,000, and the court of appeals' finding can therefore be upheld only if that court correctly decided that the trial court's finding of fact 11 was clearly erroneous.

However, the court of appeals never explicitly assigns error to the factual findings of the trial court, but claims to be "[a]ccepting the facts as found by the trial court." *Id.* Likewise, England does not argue that the trial court's finding of fact on this issue was clearly erroneous or even that the court of appeals found it to be clearly erroneous. Instead he argues that the court of appeals' ruling is consistent with the facts as found by the trial court. We disagree. If one accepts the trial court's finding that both parties believed $25,000 was owing on the original agreement, one cannot also accept the court of appeals' finding that the parties were uncertain of the amount owed. Thus, while the court of appeals claims to be "[a]ccepting the facts as found by the trial court," it has instead assumed facts contrary to those found by the trial court, implicitly rejecting the trial court's findings. The court of appeals errs in reversing a trial court's finding of fact unless such a finding is determined to be clearly erroneous. *Sevy*, 902 P.2d at 635. The court of appeals made no such determination, and England has not even argued, much less shown, clear error in the trial court's finding that Horbach executed the May 23 agreement under the belief that he owed England $25,000. We therefore conclude that the court of appeals erred insofar as it relied on the assumption that both parties were uncertain of the amount owed, and we explicitly adopt the trial court's find-

ing that "at the May 23rd meeting both [England] and [Horbach] mistakenly believed that $25,000 remained owing under the 1989 stock purchase agreement."

## II. WAS THE MAY 23 AGREEMENT AN ACCORD AND SATISFACTION?

We must next determine whether, accepting the facts as found by the trial court, the court of appeals correctly found that the May 23 agreement constituted an "accord and satisfaction" agreement enforceable separately from the parties' original 1989 agreement. According to the rule cited by the court of appeals, "[t]he elements of an accord and satisfaction include[ ] '(i) a bona fide dispute [or uncertainty] over an unliquidated amount; (ii) a payment tendered in full settlement of the entire dispute; and (iii) an acceptance of the payment.'" *England*, 905 P.2d at 303 (change in original) (quoting *Estate Landscape & Snow Removal Specialists, Inc. v. Mountain States Tel. & Tel. Co.*, 844 P.2d 322, 325 (Utah 1992) (citing *Marton Remodeling v. Jensen*, 706 P.2d 607, 609 (Utah 1985); *Neiderhauser Builders & Dev. Corp. v. Campbell*, 824 P.2d 1193, 1197 (Utah. Ct.App.1992))). In view of its finding that the parties were uncertain of the amount owed under the original contract, the court of appeals concluded that their May 23 agreement was the result of a compromise between England and Horbach—a new agreement constituting an accord and satisfaction. *Id.* at 304.

The court of appeals then determined that while the parties were both under the mistaken impression that money was still owed on the contract, this mistake went to the terms of the original contract but did not affect the terms of the new and separate agreement—the accord and satisfaction—entered into by the parties on May 23, 1991. *Id.* at 305. The law of mutual mistake in this state declares, "'A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain.'" *Warner v. Sirstins*, 838 P.2d 666, 669 (Utah.Ct.App.1992) (quoting *Robert Langston Ltd. v. McQuarrie*, 741 P.2d 554, 557 (Utah.Ct.App.1987)). The court of ap-

peals writes, "In the instant case, the parties were mistaken as to facts relevant to the original contract—whether money was then due and owing—not as to a term underlying the accord and satisfaction." *England*, 905 P.2d at 305 n. 4. While a mutual mistake does invalidate only the agreement entered into in reliance on the mistaken assumption, we do not decide the correctness of the court of appeals' legal conclusion that a mistake as to the amount owed does not go to the terms of an accord in satisfaction of that debt. Instead, we conclude that the court of appeals misapplied this rule of law to the facts of the present case.

Taking the facts as found by the trial court, there could have been no accord and satisfaction entered into on May 23, 1991, because the first element of accord and satisfaction—the existence of a bona fide dispute or uncertainty over an unliquidated amount—was not present. The trial court's finding that both parties believed Horbach owed England $25,000 precludes the possibility of a dispute over the amount owing and forces us to conclude that any uncertainty Horbach may have had was cleared up, before he signed the May 23 agreement, by England's own statement that Horbach owed him $25,000. Therefore, when Horbach executed the agreement he was certain, though mistaken, of the amount he owed. If there was no dispute and no uncertainty, there could have been no compromise and thus no accord. Accepting the facts as found by the trial court, we must conclude that the May 23 agreement represented merely the conclusion of the parties' original contract, not a new accord in satisfaction of an uncertain debt.

The court of appeals' ultimate conclusion that the parties' mistake went to the underlying agreement, not to their May 23, 1991, accord and satisfaction, is based on a mischaracterization of the trial court's findings of fact. If we accept the facts as actually found by the trial court, there could have been no accord and satisfaction. The parties agreed that Horbach would pay England $25,000 based on their mutual mistaken belief that Horbach owed England $25,000, not as a compromise to satisfy an uncertain debt.

The trial court therefore correctly concluded that "the May 23rd agreement was made under a mutual mistake of fact which went to its essence and, therefore, the putative agreement is unenforceable." Horbach's additional promise to give England two percent of the Medicode stock must therefore be treated either as a gratuitous promise unsupported by consideration or, as Horbach suggests, as a promise to hold the stock as security for payment on Horbach's post-dated $25,000 check. In either case, we may uphold the trial court's conclusion that "[a]ny concession extracted from [Horbach] by [England] in the May 23rd alleged agreement lacks consideration and the agreement, therefore, is unenforceable."

On appeal, England does not argue that the trial court's factual finding was in error, only that the common mistake of the parties constitutes an "uncertainty" within the meaning of the rule of accord and satisfaction. By blurring the distinction between mistake and uncertainty, England tries to make the trial court's facts fit within the court of appeals' theory of the case. A mistake, however, is clearly different from an uncertainty. In fact, one might argue that making a mistake requires some degree of certainty or at least some confidence that one's assumptions are correct. England's argument that the parties' mutual mistake should constitute an uncertainty within the rule of accord and satisfaction would effectively eliminate the doctrine of mutual mistake from contract law because any mutual mistake could be called merely an uncertainty. Such a broad definition of "uncertainty" is unwarranted by logic or precedent and would require courts to enforce contracts in ways that the parties could never foresee at the time of contracting and that might even be contrary to the intent of both parties.

Because there was no dispute between the parties and no uncertainty in the parties' minds at the time of the May 23 agreement, that agreement cannot be characterized as an "accord and satisfaction" but merely as the conclusion of their original 1989 stock sales agreement. As such, the May 23 agreement was premised on a mutual mistake of material fact and is unenforceable. The court of

appeals' decision to enforce that agreement must therefore be reversed.

## IV. DID THE TRIAL COURT ERR IN ALLOWING HORBACH'S COUNTER-CLAIM FOR OVERPAYMENTS?

England argues finally that the trial judge abused his discretion in allowing Horbach to amend his pleading to conform to the evidence at trial, thereby permitting Horbach's counterclaim for overpayments. Rule 15(b) of the Utah Rules of Civil Procedure provides:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

Utah R. Civ. P. 15(b).

■ The decision to permit amendment under rule 15(b) of the Utah Rules of Civil Procedure is subject to what we have called conditional discretionary review. *See Langeland v. Monarch Motors, Inc.*, 307 Utah Adv. Rep. 3, 4, —— P.2d ——, —— (Dec. 31, 1996) (applying conditional discretionary review to Utah R. Civ. P. 36(b)). The trial court's discretion to grant amendment of the pleadings is conditioned on the satisfaction of two preliminary requirements: a finding that the presentation of the merits of the action will be subserved by amendment and a finding that the admission of such evidence would not prejudice the adverse party in maintaining his action or defense on the merits. The trial court has only limited discretion in making these preliminary findings, but once these prerequisites are met, the trial court has full discretion to allow an amendment of the pleadings; that is, it may grant or deny a party's motion for amendment upon any reasonable basis, and the court's decision can be reversed only if abuse of discretion appears. *Cf. id.*

■ In this case, England argues convincingly that he was prejudiced in maintaining his defense against Horbach's counterclaim because of the lateness of the amendment. In *Langeland,* this court held that "the factors most important to our finding of prejudice ... include (i) the temporal proximity of the amendment to the date of trial, and (ii) whether the party opposing amendment relied on the [pleadings] in such a way as to detrimentally affect its ability to prepare its case." *Langeland* at 8, at ——. In this case, Horbach first mentioned his counterclaim in his trial memorandum and moved for permission to amend his pleadings at the end of the presentation of evidence. Prejudice might be found in the fact that England had no opportunity to prepare a response to the counterclaim and no time to brief and argue legal defenses such as waiver and estoppel, and also in the fact that England waived his right to a jury trial or rejected settlement offers in reliance on his understanding that no counterclaim would be pursued.

However, the rule requires the trial court to consider prejudice only "[i]f evidence is objected to at the trial." Utah R. Civ. P. 15(b). As his own brief states, "England acknowledges that no objection was raised at trial." Because England failed to object, the trial court had full discretion to grant or deny Horbach's motion to amend the pleadings and can be reversed only upon a finding of abuse of discretion, that is, if "no reasonable basis" for the trial court's decision can be found. Considering the trial court's finding that Horbach had overpaid England by $169,501.75, the court's decision to allow Horbach's claim for that amount is reasonable and does not constitute an abuse of its discretion.

England suggests that the counterclaim for overpayments that Horbach introduced at trial was intentionally kept hidden until the day of trial and that allowing Horbach to amend his pleadings at that late date will encourage other litigants to keep counterclaims hidden until the eve of trial. However, the trial court's decision is not likely to have the precedential effect England fears. First, any real advantage a party might gain by such surprise would constitute prejudice within the meaning of rule 15(b), and if objected to at trial, the court would not have

discretion to allow the amendment. *See* Utah R. Civ. P. 15(b). Second, even in the absence of prejudice the trial court's decision to permit a rule 15(b) amendment is within the discretion of the trial court and any such "secret claims" would be lost if the trial judge found any reasonable basis for denying the motion.

Litigants are adequately discouraged from keeping their claims secret until the eve of trial by the fact that the trial judge has full discretion to deny late motions to amend for any reason and the knowledge that most courts look on such motions with disfavor and are not easily persuaded to grant them. *Girard v. Appleby*, 660 P.2d 245, 248 (Utah 1983). Even the most calculating litigants are unlikely to risk losing their claim merely in the hope of gaining some kind of advantage through the element of surprise. This is especially true when the potential advantage to be gained could be eliminated by opposing counsel through an objection to the introduction of the evidence at trial and a showing that the amendment would prejudice them in the presentation of the merits of their action. The Rules of Civil Procedure are sufficient to discourage litigants from intentionally concealing counterclaims until the eve of trial. We are not willing to further constrict the discretion of trial judges by second-guessing their judgment every time an amendment to a party's pleadings is permitted.

Because England failed to object to the presentation of evidence of Horbach's counterclaim at trial, we conclude that the trial court was within its discretion to permit Horbach to amend his pleadings to conform to the evidence introduced at trial.

Taking the facts as the trial court found them, we conclude that the court of appeals erred in reversing the district court. If on May 23, 1991, the parties were convinced that Horbach owed England $25,000, there could have been no accord and satisfaction, because there was no uncertainty or dispute about the amount owed. Although the facts on the record are somewhat ambiguous, England does not urge us to reexamine the trial court's findings of fact but merely tries to make the trial court's facts fit within the court of appeals' theory of the case. This is an awkward fit at best and would require the court to define "uncertainty" so as to include "mistakes." This is not just a broad definition, it is a misdefinition, and by conflating the two terms, the court would also conflate two doctrines, effectively subsuming the doctrine of mutual mistake within the theory of accord and satisfaction. Such a change in the common law is not justified by logic or by equity, particularly considering that the result in this case would be to permit one party to retain what appears to be an unjust enrichment of $169,501.75.

The judgment of the court of appeals is reversed, and the trial court judgment reinstated.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur.