1999 UT 13

**FIBRO TRUST, INC., Plaintiff and Appellant,**

v.

**BRAHMAN FINANCIAL, INC., a Nevada corporation; American Pacific Securities, Ltd., a Hong Kong corporation; Mark E. Eames; et al., Defendants and Appellees.**

No. 970422.

Supreme Court of Utah.

Feb. 12, 1999.

---

1. *See* Charles Dickens, *Bleak House* 51–55 (Norman Page ed., Penguin Books 1971) (1853).

Mitchell R. Barker, Thomas E. Stamos, West Valley City, for plaintiff.

Brian Steffenson, James McConkie, Salt Lake City, for defendants.

ZIMMERMAN, Justice:

¶ 1  Plaintiff Fibro Trust, Inc. ("Fibro"), brought breach of contract and conversion claims against defendants Brahman Financial, Inc. ("Brahman"), American Pacific Securities, Ltd. ("APS"), and Mark Eames. The trial court granted a directed verdict for defendants. Fibro argues on appeal that the trial court erred in concluding that the contract was illegal. We agree and reverse and remand.

¶ 2  Fibro owns millions of shares in a publicly held company, Leasing Technology, Inc. ("LTI"). Fibro orally agreed to authorize Tranco, a stock transfer company, to register but not deliver 5.5 million restricted LTI shares to Brahman. In return, Brahman agreed to undertake marketing efforts to expose LTI's stock to domestic and foreign broker dealers.

¶ 3  On June 1, 1990, pursuant to the oral agreement, Fibro delivered the 5.5 million restricted shares to Tranco and instructed it to prepare a certificate for the shares in Brahman's name but to return the new certificate to Fibro to be held until Brahman performed under the agreement. Instead of returning the certificate to Fibro, Tranco forwarded it directly to Brahman. Thereafter, Brahman retained 60,000 shares but issued 4 million of the shares in APS's name and the remainder in the name of various other entities and individuals.

¶ 4  After Fibro realized that Brahman had physical possession of the certificate for the 5.5 million shares and had transferred the shares, Fibro and Brahman signed a written agreement. Brahman agreed to use its best efforts to sell 15 million shares of LTI common stock outside of the United States. Specifically, Brahman agreed to use its best efforts to sell at least 1 million shares each calender quarter, beginning with the second quarter of 1991, until it sold 15 million shares. It also agreed to use its best efforts to sell the shares at a bid price of "not less than $1.00 per share." Brahman agreed that it would purchase at least $10,000 in LTI shares each month, commencing April 1, 1991. Brahman also acknowledged that it possessed 479,610 shares of LTI common stock and agreed that it would pay Fibro at least $537,163 for the shares by April 1, 1994. In exchange, Fibro agreed that once Brahman sold the 15 million shares and paid Fibro $537,163 for the additional 479,610 shares, Brahman would be entitled to the 5.5 million shares of restricted LTI stock. The agreement also released Fibro from its obligations under the agreement if any government agency imposed sanctions on Brahman for securities violations.

¶ 5  On April 22, 1991, Fibro informed Brahman that it believed Brahman had breached the December 26, 1990, contract and requested return of the 5.5 million restricted LTI shares and payment of $537,163 for the other LTI common shares. Brahman never returned any shares or made any payment to Fibro. Fibro filed an action against Brahman, Eames, and APS, alleging breach of contract, conversion, breach of fiduciary duty, fraud, and conspiracy. A nonjury trial on these claims began on September 26, 1995. After Fibro presented its case, Brahman, Eames, and APS moved for a directed verdict, arguing that because the contract at issue was illegal, Fibro could not prevail on any of its causes of action. The trial court granted the joint motion for directed verdict, concluding that the agreement "was an illegal contract" and "[a]s an illegal contract, the Court will take no action to assist plaintiff in its attempt to try and enforce the terms of said illegal contract." Fibro appealed.

¶ 6  On appeal, Fibro argues that the trial court erred in granting Brahman, Eames, and APS's directed verdict motion. We first address the motion as it pertains to Brahman. Fibro contends that the trial court erred in relying on illegality of contract to dismiss Fibro's claim because Brahman failed to plead illegality as an affirmative defense. Fibro also argues that the trial court erred in concluding that the contract was illegal and

in barring Fibro's conversion claim. We address each argument in turn.

¶ 7 Fibro argues that Brahman waived its illegality defense by failing to raise it as an affirmative defense in its answer. Rule 8(c) of the Utah Rules of Civil Procedure requires that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively ... illegality." Utah R. Civ. P. 8(c). Brahman acknowledges that it did not raise the illegality defense in its answer, but argues that the court properly considered its defense because the parties tried the issue by implied consent. Brahman also claims that it did not waive the defense because APS raised illegality in its answer.

¶ 8 Rule 15(b) of the Utah Rules of Civil Procedure governs amendments when parties have tried issues by express or implied consent. Rule 15(b) provides:

When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendments of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court shall grant a continuance, if necessary, to enable the objecting party to meet such evidence.

Utah R. Civ. P. 15. Rule 15(b) provides two situations in which a court can rule on issues not raised by the pleadings. The first situation—the mandatory 15(b) amendment to conform—requires the trial court to consider issues not raised in the pleadings if the parties tried the issues by express or implied consent. *See Keller v. Southwood North Medical Pavilion, Inc.,* 959 P.2d 102, 105

(Utah 1998). The court must first determine whether the parties tried the issue by express or implied consent. *See id.* A party may try an issue by implied consent by failing to object to the introduction of evidence related to the unpleaded issue. *See id.* at 106. A court's conclusion that parties tried an issue by express or implied consent is a legal question, which we review for correctness. *See id.* at 105. However, "because the trial court's determination of whether the issues were tried with all parties' 'implied consent' is highly fact intensive, we grant the trial court a fairly broad measure of discretion in making that determination under a given set of facts." *Id.*

¶ 9 Once a party objects to evidence at trial on the ground that it is outside the issues raised in the pleadings, however, the second rule 15(b) provision—the permissive 15(b) amendment—applies. After this objection, the court *may* allow a party to amend its pleadings to include the issue if (i) "the presentation of the merits of the action will be subserved thereby" and (ii) "the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." Utah R. Civ. P. 15(b). We review a court's decision to permit amendment under this rule 15(b) provision under a "conditional discretionary review." *England v. Horbach,* 944 P.2d 340, 345 (Utah 1997). We have described the trial court's discretion in allowing such amendments as follows:

The trial court's discretion to grant amendment of the pleadings is conditioned on the satisfaction of two preliminary requirements: a finding that the presentation of the merits of the action will be subserved by amendment and a finding that the admission of such evidence would not prejudice the adverse party in maintaining his action or defense on the merits. The trial court has only limited discretion in making these preliminary findings, but once these prerequisites are met, the trial court has full discretion to allow an amendment of the pleadings; that is, it may grant or deny a party's motion for amendment upon any reasonable basis, and the court's deci-

sion can be reversed only if abuse of discretion appears.

*Id.*

■ ¶ 10 In this case, Brahman argues that the parties raised the illegality issue by implied consent because Fibro argued in its trial brief that the contract was not illegal. However, Fibro also objected to the court's consideration of Brahman's illegality defense in that same trial brief, arguing that Eames and Fibro waived the defense by not raising it in the answer. Fibro again objected during trial to the court's consideration of the illegality defense in response to Brahman's motion for a directed verdict, arguing that the court should not consider the illegality defense because Brahman failed to allege it as an affirmative defense in its answer. Finally, Fibro objected to the court's consideration of the illegality defense in a post-trial motion to set aside the court's directed verdict.

¶ 11 Because Fibro objected to the illegality issue at trial, the second rule 15(b) provision relating to permissive amendment applies, not the mandatory amendment to conform as Brahman suggests. Ordinarily, after a party objects to evidence related to issues outside of the pleadings, the trial court would decide whether to allow the other party to amend its pleadings by determining if the amendment would serve the presentation of the merits and whether the objecting party would suffer prejudice. *See* Utah R. Civ. P. 15(b).

■ ¶ 12 In this case, Brahman did not even move to amend its answer to add the

illegality defense, and the trial court did not undertake the requisite procedural steps for determining whether to allow Brahman to amend. We have stated: "While we have held that the rules must be liberally interpreted to accomplish justice, they should be sufficiently adhered to so there is an orderly procedure followed in the resolution of the case." *Valley Bank & Trust Co. v. Wilken,* 668 P.2d 493, 494 (Utah 1983). By not following the rule 15(b) procedure for addressing objections to evidence as outside the pleadings, the trial court abused its discretion.[1] Accordingly, we remand this issue to the trial court for consideration of Fibro's objections. However, because APS did plead illegality in its answer, we next address the trial court's conclusion that the contract was illegal.[2]

■ ¶ 13 Fibro argues that the trial court erred in granting APS's motion for a directed verdict based on illegality of contract. Fibro challenges the sufficiency of the trial court's findings of fact related to the illegality defense, contending that the court erred in failing to specify any law violated by the contract. We will uphold a trial court's directed verdict only if "reasonable minds would agree that no substantial evidence supported each element of the cause of action." *Brehany v. Nordstrom, Inc.,* 812 P.2d 49, 57 (Utah 1991). If the evidence provides any reasonable basis to support a verdict for the losing party, we must reverse. *See id.* In undertaking this review, we "examine the evidence in the light most favorable to the losing party." *Id.*[3]

---

1. Moreover, we do not agree that Brahman can claim it raised the illegality defense simply because APS raised the defense in its answer. Brahman filed its answer to Fibro's amended complaint on March 19, 1993. APS did not file its answer until a year and a half later, September 27, 1994. Fibro has not had an opportunity to prove that allowing Brahman to argue illegality as a defense would prejudice it. For example, Fibro may be able to establish that amendment would prejudice it because it had conducted discovery prior to APS's raising illegality and therefore had not focused discovery efforts on the illegality issue.

2. In the event that the trial court on remand allows Brahman to amend its answer to allege

the illegality defense, our analysis of the directed verdict will govern.

3. The trial court made one finding of fact related to the contract's illegality, specifically:

George Badger, acting individually and as an agent of plaintiff, entered into an agreement with Brahman Financial that in essence was part of a scheme by Mr. Badger to artificially raise and manipulate the market price of the stock of [LTI]. This agreement required Brahman to take steps to buy and sell stock in LTI in a way which Badger, the plaintiff and Brahman understood would be artificial *in nature and cause the stock price of LTI to remain artificially high.*

Thereafter, the trial court concluded as a matter of law that the agreement "was an illegal con-

¶ 14 In their joint motion for directed verdict, APS and Brahman argued that the contract violated section 61–1–1 of the Utah Code. Section 61–1–1 provides:

It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly to:

(1) employ any device, scheme, or artifice to defraud;

(2) make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Utah Code Ann. § 61–1–1 (1997). In *State v. Larsen*, 865 P.2d 1355 (Utah 1993), we held that a person violates section 61–1–1(2) only if that person acts "willfully." *Id.* at 1358. We also concluded that section 61–1–1(2) did not have a "scienter" requirement; that is, a person need not have "the intent to deceive, manipulate, or defraud" to violate section 61–1–1(2). *Id.* (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). In so concluding, we determined that we must read section 61–1–1 in conjunction with section 61–1–21 of the Code, which proscribes penalties for a violation of section 61–1–1. Section 61–1–21 provided that "a person who *willfully* violates Section 61–1–1 shall upon conviction be ... fined ... or imprisoned." Utah Code Ann.

§ 61–1–21 (1997) (emphasis added).[4] From this plain language, we held that a person violates section 61–1–1(2) only if that person willfully misstates or omits material facts. *See Larsen*, 865 P.2d at 1358. But we declined to interpret willful as requiring scienter, which is the intent to· deceive, manipulate, or defraud. *See id.* Instead, we relied on the definition of willful provided in section 76–2–103 of the Code, stating that "[a] person engages in conduct ... willfully ... when it is his conscious objective or desire to engage in the conduct or cause the result." Utah Code Ann. § 76–2–103(1) (1995). For additional support for our conclusion that section 61–1–1(2) did not have a scienter requirement, we looked to section 17(a)(2) of the Securities Act of 1933,[5] which is almost identical to section 61–1–1(2) and which the United States Supreme Court has held does not have a scienter requirement. *See Aaron v. Securities & Exch. Comm'n*, 446 U.S. 680, 697, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). We also recognized that declining to require scienter for a section 61–1–1(2) violation would achieve uniformity with a majority of other states, an aim the legislature expressed in section 61–1–27 of the Code.[6] *See Larsen*, 865 P.2d at 1360 & cases cited therein. However, because *Larsen* dealt only with section 61–1–1(2), we declined to determine the requisite mental state for a violation of either section 61–1–1(1) or section 61–1–1(3). *See id.* at 1357 n. 1 & 1359 n. 6. We now answer that question.

¶ 15 Employing the same interpretive process we used in *Larsen*, we con-

---

tract." The trial court also made one finding related to breach of contract: "The court finds no evidence of breach of contract."

4. The legislature has changed the language of section 61–1–21. It now reads: "A person who willfully violates Section 61–1–1" is guilty either of a third or a second degree felony. Utah Code Ann. § 61–1–21 (Supp.1998).

5. Section 17(a) provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C.A. § 77q(a) (1997).

6. Section 61–1–27 provides: "This chapter may be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation." Utah Code Ann. § 61–1–27 (1997).

clude that proof of a violation of either section 61–1–1(3) or section 61–1–1(1) requires proof that the person willfully engaged in the prohibited conduct. Section 61–1–21 penalizes any willful violation of section 61–1–1; it does not distinguish between section 61–1–1's subsections. Thus, a person violates section 61–1–1(3) by willfully engaging in conduct "which operates or would operate as a fraud or deceit upon any person." *See* Utah Code Ann. § 61–1–1(3) (1997). A person violates section 61–1–1(1) by willfully "employ[ing] any device, scheme, or artifice to defraud." *See id.* § 61–1–1(1). We recognize that applying the "willful" mental state to the prohibited conduct in section 61–1–1(1) amounts to a scienter requirement. That is, a person violates section 61–1–1(1) only if that person willfully engaged in conduct designed to defraud. As we explained in *Larsen*, "[t]o act willfully ... means to act deliberately and purposefully, as distinguished from merely accidentally or inadvertently." *Larsen*, 865 P.2d at 1358 n. 3. Reading section 61–1–1(1) as having a scienter requirement comports with both federal and sister state law. In *Aaron*, the United States Supreme Court held that section 17(a)(1) of the Securities Act of 1933, unlike sections 17(a)(2) and (3), contained a scienter requirement. *See* 446 U.S. at 699–700, 100 S.Ct. 1945. The Court explained that Congress's use of the words, "device," "scheme," and "artifice" in section 17(a)(1) plainly indicated an intent "to proscribe only knowing or intentional misconduct." *Id.* at 696, 100 S.Ct. 1945. The Court also recognized that the three terms, "device," "scheme," and "artifice," "all connote knowing or intentional practices." *Id.* Holding that section 61–1–1(1) requires proof of scienter but that section 61–1–1(2) and (3) do not comports not only with the Supreme Court's reasoning in *Aaron* but also with other state court decisions interpreting state securities acts similar to Utah's. *See, e.g.,*

*Mann v. Oppenheimer & Co.,* 517 A.2d 1056 (Del.1986); *Illinois v. Witlow,* 89 Ill.2d 322, 60 Ill.Dec. 587, 433 N.E.2d 629, 634 (1982); *Enservco, Inc. v. Indiana Sec. Div.,* 623 N.E.2d 416 (Ind.1993). Given our decision in *Larsen,* the statute's plain language, and the persuasive reasoning of other courts addressing the issue, we conclude that section 61–1–1(1) of the Code contains a scienter requirement although neither section 61–1–1(2) nor 61–1–1(3) has such a requirement.[7]

¶ 16 In light of our analysis of section 61–1–1, we now address whether the trial court erred in concluding that the contract was illegal. We begin by setting out the relevant findings of fact and conclusions of law. The trial court made the following findings of fact:

1. Based upon the admissions of plaintiff's counsel and the evidence heard by the Court, there is no evidence of fraud by defendant that has been established by clear and convincing evidence.

2. George Badger, acting individually and as an agent of plaintiff, entered into an agreement with Brahman Financial that in essence was part of a scheme by Mr. Badger to artificially raise and manipulate the market price of the stock of Leasing Technology, Inc. ("LTI"). This agreement required Brahman to take steps to buy and sell stock in LTI in a way which Badger, the plaintiff and Brahman understood would be artificial in nature and cause the stock price of LTI to remain artificially high.

3. Pursuant to this agreement, plaintiff voluntarily transferred title to 5,500,000 shares of LTI common stock to Brahman Financial. Brahman thereafter transferred 4,000,000 of these shares to American Pacific Securities, Ltd. ("APS"), and the balance of the shares to other entities.

7. In response to APS's directed verdict motion, Fibro argued that APS could not prove a section 61–1–1(3) violation because such a violation required proof of a victim. Fibro contended that even if the conduct in which it engaged "operate[d] as a fraud or deceit," it did not operate "as a fraud or deceit *upon any person.*" *See* Utah Code Ann. § 61–1–1(3) (1997). The trial court declined to adopt Fibro's reading of subsection (3). We agree that APS need not show injury to

a specific person in order to show a section 61–1–1(3) violation. As the United States Supreme Court explained, "Congress, in empowering the courts to enjoin any practice which operates 'as a fraud or deceit' upon a client, did not intend to require proof of intent to injure and *actual injury to the client.*" *Securities & Exch. Comm'n v. Capital Gains Research Bureau, Inc.,* 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963) (emphasis added).

Some of these other entities returned some of the shares in LTI that they received from Brahman.

4. At some point in time, plaintiff declared that it felt that Brahman had defaulted under the agreement and began demanding return of the 5,500,000 shares of stock which had been delivered to Brahman, and subsequently, transferred to other entities.

5. The court finds no evidence of breach of contract.

6. The individuals and entities involved in the aforementioned agreements and activities were all equally sophisticated and understood their actions and the consequences of the same.

7. There are no facts to support the claim that any of the defendants owed a fiduciary duty to plaintiff.

The court made the following conclusions of law:

1. The agreement entered into between Badger, for plaintiff, and Brahman was an illegal contract.

2. As an illegal contract, the Court will take no action to assist plaintiff in its attempts to try and enforce the terms of said illegal contract.

3. Defendants committed no fraud.

4. Defendants did not breach any fiduciary duties.

5. Defendants did not convert the LTI stock. An entity cannot convert something to which it has obtained legal title.

¶ 17 We conclude that the trial court erred in granting the directed verdict. From our review of the record, we conclude that APS failed to present evidence sufficient that "reasonable minds would agree" that Fibro "willfully" engaged in any conduct prohibited by section 61–1–1. The court did not make specific findings establishing that APS proved each element of a section 61–1–1 violation. In fact, the court did not even reference the statute in its findings or conclusions.

Without additional findings, we cannot conclude that reasonable minds would agree that Fibro willfully engaged in conduct that violated section 61–1–1, the only law APS raised in asserting the contract's illegality. Because reasonable minds would not agree that Fibro's conduct was willful, the trial court erred in directing a verdict in APS' favor. Accordingly, we reverse the directed verdict and remand the case for further proceedings consistent with this opinion.[8]

¶ 18 We also conclude that the trial court erred in directing a verdict on Fibro's breach of contract claim. The record provides evidence that Brahman did breach the agreement. Among other things, there is evidence that Brahman failed to purchase the $10,000 in LTI stock in any month as required by the agreement and that it failed to return the LTI restricted stock after a governmental agency sanctioned Brahman. Thus, there is a reasonable basis to support a verdict that Brahman did breach the contract.

¶ 19 Finally, Fibro argues that the trial court erred in ruling that Brahman did not convert the 5.5 million shares of LTI stock that Fibro transferred to Brahman. The trial court concluded, as a matter of law, that "[d]efendants did not convert the LTI stock" because "[a]n entity cannot convert something to which it has obtained legal title." Fibro does not contest the fact that it transferred the shares into Brahman's name. However, Fibro argues that Brahman nonetheless converted the shares because Fibro and Brahman had agreed that Brahman would not take possession of the shares but would instead hold them in trust. Whether the trial court properly applied the law of conversion is a legal question, which we review for correctness. *Cf. State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

¶ 20 In *Allred v. Hinkley,* 8 Utah 2d 73, 328 P.2d 726 (Utah 1958), we held: "A conversion is an act of wilful interference with a chattel, done without lawful justifica-

8. We note that illegality is an affirmative defense; therefore, APS will bear the burden to prove each of its elements. *See Messick v. PHD Trucking Serv., Inc.,* 615 P.2d 1276, 1277 (Utah 1980) ("Accord and satisfaction is an affirmative de-

fense and requires the party alleging it to meet the burden of proof as to every necessary element."); *see also McCarthy v. Weare Comm'n Co.,* 87 Minn. 11, 91 N.W. 33, 34 (1902) ("The burden of proof is on the party alleging illegality.").

tion by which the person entitled thereto is deprived of its use and possession." *Id.* at 728; *see also Phillips v. Utah State Credit Union,* 811 P.2d 174, 179 (Utah 1991). "Conversion is concerned with possession, not title." 18 Am.Jur.2d *Conversion* § 75 (1985). Thus, a party alleging conversion must show that he or she is entitled to *immediate* possession of the property at the time of the alleged conversion. *See Benton v. Utah Div. of State Lands & Forestry,* 709 P.2d 362, 365 (Utah 1985). "An interest in the property which does not carry with it a right to possession is not sufficient; the right to maintain the action may not be based upon a right to possession at a future time." *Id.* (internal quotations, citations, and emphasis omitted). In short, a conversion does not occur until the defendant exercises control over property that is inconsistent with the plaintiff's right of possession to that property. *See* 18 Am. Jur.2d *Conversion* § 28 (1985).

■ ¶ 21  In this case, Fibro concedes that it voluntarily transferred title to the LTI shares to Brahman. However, Fibro argues that Brahman nonetheless converted the shares by transferring them to third parties in breach of the parties' contract, which required Brahman to hold the shares in trust. We agree with Fibro that the fact that Brahman held legal title to the shares does not necessarily foreclose Fibro's conversion claim. However, we must remand this issue to the trial court for additional findings and evidence if necessary.

¶ 22  Chief Justice HOWE, Associate Chief Justice DURHAM, Justice RUSSON, and Judge BILLINGS concur in Justice ZIMMERMAN'S opinion.

¶ 23  Justice STEWART does not participate herein; Court of Appeals Judge JUDITH M. BILLINGS sat.

