Don FORSYTH, Plaintiff and Respondent,

v.

R. Brian PENDLETON, Executor of the Estate of Frances J. Pendleton, Deceased, Defendant and Appellant.

No. 16695.

Supreme Court of Utah.

Sept. 2, 1980.

---

Thomas O. Parker, Salt Lake City, for defendant and appellant.

Gary A. Weston of Senior & Senior, Salt Lake City, for plaintiff and respondent.

**PER CURIAM:**

This is an action for specific performance of a uniform real estate contract between plaintiff–buyer and defendant–seller. Upon trial to the court, an order and judgment was entered which required delivery of the deed to the subject property to plaintiff. From that result, defendant appeals.

Plaintiff entered into a Uniform Real Estate Contract with Frances Pendleton, now deceased and whose estate is defendant herein, for the purchase of certain real property on March 24, 1971, for the sum of $9,000. Plaintiff paid $3,000 down and was to pay the remaining balance at the rate of $75 per month along with 7% interest and real property taxes. This transaction was handled by Mrs. Pendleton's attorney, E. J. Skeen. After making payments for the months of May, June, July and August of 1971, plaintiff's then spouse directed a letter to Mrs. Pendleton explaining that certain difficulties had arisen regarding the property and asked for her grace in waiving payments until spring. Of particular interest are the following provisions of that letter:

> We would like to leave things just like they are through the winter to see what spring brings as far as water, etc. If it works out, we plan on building then; and the balance we owe you would be paid in full at that time because we have gotten a loan for the price of the property and our home together in one. Then, you would be out of the problem altogether. However, until that time we would like to leave things just like they are. You keep the money you already have. We won't make any more monthly payments through the winter.

Mrs. Pendleton, upon receipt of plaintiff's letter, forwarded it to Mr. Skeen who in turn wrote to plaintiff requesting that he, Mr. Skeen, be contacted to discuss the issues raised in plaintiff's letter. At this juncture the facts take divergent roads depending upon the parties' position. Suffice it to say that the trial court believed there was sufficient reason to believe that Mr. Skeen was acting as Mrs. Pendleton's

agent and as such he advised plaintiff to withhold payment and would talk further with Mrs. Pendleton and get back to plaintiff with instructions. From that point, plaintiff made no further payments on the contract or for taxes. Mrs. Pendleton died on November 25, 1972, and her estate was admitted to probate with Mr. Skeen representing the estate. No claim was filed by plaintiff, nor in spite of defendant's contention, was there any need of such claim being filed.[1] Subsequently, in October, 1976, and without any intervening communications by either party, there was tendered to Mr. Skeen a check in the sum of $7,581.79 which plaintiff claimed to be payment in full for principal and interest. It apparently is undisputed that said sum did not include taxes. It is equally undisputed that the taxes had been paid by Mrs. Pendleton and subsequently her estate and that tax notices were never sent directly or forwarded to plaintiff, in spite of the fact that his location was apparently readily ascertainable. Mr. Skeen acting on behalf of the estate, refused to accept the plaintiff's tender and this action ensued.

The trial court found that plaintiff had not abandoned the contract, ordered him to pay the taxes, ordered defendant to execute a deed in favor of plaintiff and awarded plaintiff the sum of $1,000 as attorney's fees.

■■ On appeal, defendant raises a procedural question as well as the more substantial issues of agency, abandonment and tender. It is contended, on appeal though never at trial, that Mr. Skeen's testimony should have been excluded pursuant to the "Dead Man's Statute" (§ 78–24–2, U.C.A. 1953). However, defendant misperceives the intent of that provision. As this Court ruled in *Morrison v. Walker Bank*,[2] the dead man's statute should be strictly construed and when so construed does not prohibit a party or an interested party from testifying to statements of or transactions with an agent of the decedent. Further, as plaintiff correctly points out, since no objection was made to the subject testimony at the time of trial, any objection must be considered waived.[3]

■ As stated, supra, the trial court found that Mr. Skeen was acting as agent for Mrs. Pendleton when he allegedly advised plaintiff to take a "wait and see" approach to the payment schedule. We find no reason to disturb that finding.[4] The record clearly supports the finding in that the plaintiff's dealings in executing the contract were with Mr. Skeen and more importantly, the letter to Mrs. Pendleton was forwarded to Mr. Skeen for response. While these facts may be less than those necessary for the creation of actual agency, they are surely sufficient to support the court's finding of the creation of implied agency.[5]

■ As this Court held in the *Skerl* case, note 5, the general principle of the law of agency is that principals are bound by the acts of their agents which are within the apparent scope of the authority of the agent and a principal will not be permitted to deny such authority against innocent third parties who have relied on that authority. Herein, there is sufficient credible evidence to support the court's finding that the forwarding of the September 18 letter to Mr. Skeen for response and his subsequent response was sufficient to clothe him

1. *In re Estate of Sharp*, Utah, 537 P.2d 1034 (1975) is dispositive of defendant's assertion regarding the filing of claims in probate and the lower court correctly ruled that a claim for specific performance is not a "claim" within the meaning of the Probate Code.

2. 11 Utah 2d 416, 360 P.2d 1015 (1961).

3. *Knighton v. Manning*, 84 Utah 1, 33 P.2d 401 (1934).

4. Upon appeal, this Court will not disturb the trier's of facts findings unless the evidence preponderates against such findings. *Timpanogos Highlands, Inc. v. Harper*, Utah, 544 P.2d 481 (1975); *Del Porto v. Nicolo*, 27 Utah 2d 286, 495 P.2d 811 (1972).

5. *Bowen v. Olsen*, Utah, 576 P.2d 862 (1978); *Santi v. Denver Rio Grande Western Railroad Co.*, 21 Utah 2d 157, 442 P.2d 921 (1968); *Skerl v. Willow Creek Coal Co.*, 92 Utah 474, 69 P.2d 502 (1937).

with the *apparent* authority to lead plaintiff to believe he was acting as Mrs. Pendleton's agent and the estate cannot be heard to complain as against plaintiff. While we agree with the trial court's finding of agency, we are compelled to note that the agency was not unlimited, that is, Mr. Skeen was acting as agent for Mrs. Pendleton to respond to plaintiff's letter and only within the scope of that letter. Accordingly, we believe that any grace granted by him could not be greater than that actually bestowed upon him by Mrs. Pendleton, of which there is no evidence, nor any greater than that which he apparently had. In light of the contents of the September 28 letter and its repeated and specific reference to renewing the payment schedule when spring came, this Court is unable to agree with plaintiff that Mr. Skeen had unlimited authority to waive payments indefinitely. While the precise date for the recommencement of payments is not discernible, plaintiff had an affirmative obligation to either make payments or in some other fashion, renew its interest in the contract. Equity will not permit a party seeking a limited grace period to place itself in an advantaged position through inaction and conversely placing the party granting the grace in a disadvantaged posture.

 Accordingly, this Court holds that plaintiff was unjustified in relying on Mr. Skeen's waiver beyond the spring of 1972 and that the Uniform Real Estate Contract was of full force and effect upon the expiration of that temporary modification to the contract. While the trial court further found that the plaintiff had not abandoned the property, it is not possible to discern how much weight was given the supposed agency. We believe it should not have been considered at all and accordingly, this matter is remanded to further consider if plaintiff's inaction constituted abandonment totally aside from his belief that he had been excused from performance.

In making that determination, it is important to note that this Court recently stated its position regarding the question of abandonment. In *Timpanogos,* supra, this Court held:

> The term "abandonment" in the sense involved here means the intentional relinquishment of one's rights in the contract; and in order to nullify such rights, there must be a clear and unequivocal showing of such abandonment. Where there is dispute as to whether this had occurred, it is usually a question of fact, to be determined from the circumstances of the particular case, which includes not only nonperformance, but also expressions of intent and other actions of the parties.

 It is noted that while the intent to abandon must be clear and unequivocal, that intention need not be shown by the positive testimony of the purchaser but may be inferred from the acts and conduct of the purchaser, which are clearly inconsistent with an intention to continue the use of the property.[6]

 As appellant correctly points out, when the intent to abandon by one party is coupled with the equal intention of the other party, such mutual abandonment may under certain circumstances, be found to constitute rescission of the contract.[7] However, a review of the pleadings and record herein discloses no claim of rescission and accordingly the Court refrains from commenting further with reference to this case.

Appellant further argues on appeal that the tender made by plaintiff was insufficient in that it did not include payment of the taxes which payments were to be made by plaintiff pursuant to the Uniform Real Estate Contract. It is uncontested that plaintiff did not pay the taxes and it is equally uncontested that defendant made no objection to the tender as a basis for the refusal.[8] The evidence was uncontroverted that plaintiff's location was readily as-

---

6. 1 Am.Jur.2d, Abandoned, Lost and Unclaimed Property, § 40.

7. *Wallace v. Build, Inc.,* 16 Utah 2d 401, 402 P.2d 699 (1965).

8. Sec. 78-27 3, U.C.A.1953.

certainable by the use of reasonable diligence and accordingly plaintiff urges that defendant had an obligation to forward the tax notices to plaintiff for payment. However, in light of our holding, supra, plaintiff was not justified in taking no action subsequent to the spring of 1972 if such inaction is then used as a basis for claiming an advantage over the other party. Accordingly, we hold that plaintiff had an affirmative obligation to go forward with the terms of the contract and his failure to request the tax notices or otherwise discharge that obligation is evidence to be considered, along with the other surrounding circumstances regarding the claimed abandonment.

If after due consideration the trier of fact still finds a lack of the necessary intent to abandon, we find the tender otherwise acceptable as a result of defendant's failure to enter its timely objection and provide plaintiff the opportunity to satisfy such objection.[9]

Finally, defendant argues that there should not have been an award made to plaintiff for attorney's fees. In light of our remand, it would seem inappropriate to rule on that question. If, upon the trial court's further proceedings, it is found that there was an abandonment, then plaintiff's entitlement to attorney's fees is rendered moot. If it is concluded that there was no abandonment, then the contract is still in force and the contractual provisions which pertain to attorney's fees apply.

Each party to bear his own costs. This matter is remanded for proceedings in accordance herewith.

WILKINS, J., does not participate herein.

---

**9.** *Hansen v. Christensen*, Utah, 545 P.2d 1152 (1973); § 78 27 3, supra.