2007 UT App 243

**Ty ELDRIDGE and Marina Eldridge, Plaintiffs, Appellants, and Cross-appellees,**

v.

**James L. FARNSWORTH, David Farnsworth, and Gregory Farnsworth, Defendants, Appellees, and Cross-appellants.**

No. 20060333–CA.

Court of Appeals of Utah.

July 12, 2007.

Rehearing Denied Aug. 14, 2007.

640

Alvin R. Lundgren, Mt. Green, for Appellants and Cross–Appellees.

Clark B. Allred and Bradley D. Brotherson, Vernal, for Appellees and Cross-appellants.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

McHUGH, Judge:

¶ 1 Plaintiffs Ty and Marina Eldridge (the Eldridges) appeal the trial court's grant of summary judgment to Defendants James L. Farnsworth, David Farnsworth, and Gregory Farnsworth (the Farnsworths). The Eldridges also assert that the trial court erred both when it denied their motion to amend the complaint and when it ordered them to release a lis pendens. The Farnsworths cross-appeal challenging the trial court's ruling that the lis pendens did not amount to a

wrongful lien entitling them to treble damages, attorney fees, and costs. Additionally, both parties appeal the trial court's denial of attorney fees. We affirm.

## BACKGROUND

¶2 In the summer of 2004, Plaintiff Ty Eldridge (Ty) became aware of real property for sale in Neola, Utah (the Ranch). The Ranch, owned by the Farnsworths, consisted of a homestead on 280 acres with 120 shares of water. In early August 2004, Ty contacted James Farnsworth (James). The two began negotiations regarding the Eldridges' purchase of the Ranch and arranged several tours. Ty also asked James about a realtor sign on the property, but James stated that the broker's contract had lapsed. Eventually, the parties agreed on terms and executed a Real Estate Purchase Contract (the REPC) on August 24, 2004.

¶3 Under the REPC, the Eldridges agreed to purchase the Ranch and some personal property for $339,000, with a $1000 earnest money deposit and the remaining $338,000 to be paid through conventional financing. The Eldridges' obligation to purchase the Ranch was conditioned upon both their ability to obtain financing and the property's appraisal value exceeding the contract price. The REPC also included a "time is of the essence" clause and an express requirement that the parties close the transaction by October 24, 2004.

¶4 The Eldridges contacted Washington Mutual, on August 23, 2004, to arrange financing. Subsequently, Washington Mutual informed the Eldridges that it would only consider financing the purchase of the house and one acre. Ty notified James that Washington Mutual would not lend on the Ranch. Ty contacted several alternate lenders; however, the Eldridges were reluctant to finance through any of them because they required a much larger down payment and a proposal showing how positive income would be derived from ranching operations.

¶5 Due to these financing issues, Ty proposed leasing the Ranch with an option to purchase in the future (the Lease Option). Although James was initially reluctant to consider the Lease Option, he contacted Ty on September 19, 2004, to discuss the details of Ty's proposal. The next day, the Eldridges contacted Washington Mutual and canceled their conventional loan application. Additionally, sometime in September, James canceled the closing on the REPC that had been scheduled for October 24, 2004.

¶6 The parties continued discussing the Lease Option throughout September, and on October 9, 2004, Ty provided James with a rough draft. Because James was not satisfied with some of the terms, the parties continued negotiations. On October 12, Ty left a message for James asking when they could execute[1] the Lease Option. James returned Ty's call on October 16, and they discussed several topics. Ty asked for a key so that he could show his parents the Ranch, James offered to provide a title abstract if he could locate one, and James suggested that Ty contact an escrow company to handle the payments under the proposed Lease Option. The day following this conversation, the Eldridges contacted an escrow company to handle the Lease Option payments, and during that week, the Eldridges left several messages for James.

¶7 On October 26, 2004, James and Ty discussed some of the changes to what they hoped would be the final draft of the Lease Option and agreed to execute the agreement on October 28. The afternoon of the twenty-eighth, Ty tried to contact James for details on the time and place to meet. James finally returned Ty's calls in the late evening, informing Ty that the Farnsworths had just learned that the real estate listing on the Ranch had not expired. Therefore, James requested additional time to resolve the issue

---

1. Throughout their appellate briefs, their pleadings and memoranda submitted to the trial court, and oral argument before this court, the parties continually refer to "closing" on the Lease Option. However, counsel for the Eldridges confirmed at oral argument that these references to "closing" actually refer to executing a written Lease Option agreement. We use the term "executing" with respect to the Lease Option to avoid confusing settlement or closing on an already signed contract with the execution of a contract still in negotiation.

of realtor commissions before executing the Lease Option.

¶ 8 The next day, after verifying that the Ranch was an active listing, the Eldridges offered to pay the full realtor commission if they could sign the Lease Option that day. James refused to execute the Lease Option until the issue was resolved to his satisfaction. Ty informed James that the Eldridges had planned to spend the weekend at the Ranch. James gave his permission, but cautioned them against doing any additional work on the property.[2] Ty asked if there were any problems with the deal, other than the realtor issue, and James said there were not. That same day, October 29, Byron Gibson submitted a written offer to purchase the Ranch for $400,000; approximately $61,000 more than the price contemplated under either the REPC or the Lease Option.

¶ 9 As of November 1, 2004, the Farnsworths had not executed the Lease Option. On November 8, James informed the Eldridges of the $400,000 offer. The next day, the Eldridges' attorney sent a letter to the Farnsworths, stating that the "Eldridges represent that they are ready, willing and able to consummate" the REPC dated August 24, 2004.

¶ 10 On November 12, the Farnsworths executed a real estate purchase contract with Gibson to sell the Ranch for $400,000, and the Eldridges filed a complaint, alleging a single cause of action for breach of the August 24, 2004 REPC. Simultaneously, the Eldridges sought, and were granted, an ex parte temporary restraining order (TRO) to prevent the Farnsworths from selling the Ranch to Gibson. Additionally, the Eldridges filed and recorded a lis pendens against the Ranch.

¶ 11 The Farnsworths moved to strike the TRO and opposed the Eldridges' motion for a preliminary injunction. At the hearing on the motions, Ty testified that the Eldridges had not tendered any money or documents to the title company on or before the REPC closing date of October 24, 2004. In granting the motion to dissolve the temporary restraining order, the court noted that the

terms of the REPC were specific and "required the [Eldridges] to obtain a loan, to provide documents and to tender the purchase price on or before the closing date of October 24, 2004." The trial court therefore reasoned that the Eldridges could not show a reasonable likelihood of success on the merits because they "did none of the things required by the contract," and because the parties "did not agree to any written extension."

¶ 12 Following that ruling, the Eldridges filed a First Amended Complaint that no longer directly pleaded a cause of action for breach of the REPC. Instead, the Eldridges sought specific performance of the REPC or the Lease Option under theories of fraud, waiver, and promissory estoppel. The First Amended Complaint also sought "alternate recovery" in the form of damages for the value of the bargain lost by the Eldridges. The Farnsworths answered and counterclaimed for damages on the ground that the lis pendens was a wrongful lien.

¶ 13 The trial court ordered that fact discovery be completed no later than May 2, 2005, and that the case be ready for trial by September 2005. In late August 2005, the Farnsworths moved for summary judgment on the First Amended Complaint. The trial court held a pretrial conference on August 29, 2005 and scheduled trial for late January 2006. On November 1, 2005, the Eldridges filed their memorandum in opposition to the Farnsworths' summary judgment motion. A few days later, the Eldridges also sought to amend the complaint, for the second time, in an effort to allege more specifically the elements of their fraud claim. The Farnsworths opposed the motion to amend. On December 19, 2005, the trial court heard oral arguments on the Farnsworths' summary judgment motion and the Eldridges' motion to amend the complaint. Ruling from the bench, the trial court granted the motion to amend, allowing the Eldridges to file their Second Amended Complaint, but took the summary judgment motion under advisement.

**2.** The Eldridges had previously performed work on the Ranch with James's permission.

¶ 14 On January 11, 2006, the court issued a Ruling and Order granting the Farnsworths' summary judgment motion. Although the order allowing the Second Amended Complaint was issued after the Farnsworths' had moved for summary judgment, the court referenced the claims in that complaint when it granted summary judgment. On January 12, 2006, the Farnsworths prepared a proposed summary judgment order for the court's consideration.[3] Following the filing of the proposed order, both parties made several motions. First, the Eldridges opposed the proposed summary judgment order submitted by the Farnsworths on the ground that it incorporated matters beyond the scope of the motion. Second, the Eldridges submitted a motion to reconsider arguing that summary judgment had only been granted with respect to the First Amended Complaint and requesting that the trial court clarify that the claims in the Second Amended Complaint remained viable. The Eldridges argued in both these motions that the issue of whether the lis pendens constituted a wrongful lien had yet to be decided. Third, relying on the provisions in the REPC,[4] the wrongful lien statute, and rule 56 of the Utah Rules of Civil Procedure relating to temporary restraining orders, the Farnsworths moved for an award of attorney fees and costs.

¶ 15 On March 29, 2006, the trial court issued another Ruling and Order collectively disposing of the three motions. In particular, it clarified that the January 11, 2006 Ruling and Order disposed of all claims in the Second Amended Complaint. It also determined that the lis pendens was not a wrongful lien and therefore rejected both the argument that the lis pendens should be removed and the claim that the Farnsworths were entitled to damages, costs, and attorney fees under the statute. The trial court similarly refused to award fees and costs under the REPC, but did award the Farnsworths their fees and costs associated with defending against the TRO.

¶ 16 After summary judgment was entered, the Eldridges moved, pursuant to rule 15(b) of the Utah Rules of Civil Procedure, see Utah R. Civ. P. 15(b), to amend the complaint to conform to the evidence. They sought to add several new causes of action, including breach of contract, intentional and negligent misrepresentation, and breach of the covenant of good faith and fair dealing, as well as a claim for attorney fees. The trial court denied the motion.

¶ 17 At the same time, the Farnsworths filed a motion to release the lis pendens and again sought statutory attorney fees and costs. The trial court granted the motion to release the lis pendens but rejected the Farnsworths' request for costs and fees. In response, the Eldridges posted a supersedeas bond and sought a stay pending appeal of the trial court's order releasing the lis pendens. The trial court granted the stay. Both parties appealed.

## ISSUES AND STANDARDS OF REVIEW

¶ 18 First, the Eldridges argue that the trial court committed error when it granted summary judgment in favor of the Farnsworths on several of the claims in the Second Amended Complaint. "Summary judgment is appropriate only where (1) 'there is no genuine issue as to any material fact' and (2) 'the moving party is entitled to a judgment as a matter of law.'" *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439 (quoting Utah R. Civ. P. 56(c)). Therefore, "[w]e review the [trial] court's decision to grant summary judgment for correctness, granting no deference to the [trial] court." *Swan Creek Vill. Homeowners Ass'n v. Warne*, 2006 UT 22, ¶ 16, 134 P.3d 1122 (quotations omitted).

¶ 19 Second, the Eldridges assert that the trial court erred when, after awarding summary judgment to the Farnsworths, it denied the Eldridges' motion to amend the complaint to conform to the evidence under

---

**3.** The proposed summary judgment order is not in the record. However, both parties submitted memoranda referencing the proposed order, and the trial court likewise referenced the proposed order in its March 29, 2006 Ruling and Order.

**4.** The attorney fees provision in the REPC reads as follows: "In the event of litigation ... to enforce th[e REPC], the prevailing party shall be entitled to costs and reasonable attorney fees."

rule 15(b) of the Utah Rules of Civil Procedure. To determine whether a trial court properly denied a motion to amend the complaint to conform to the evidence, we first review for correctness the trial "court's conclusion that the parties tried [or did not try] an issue by express or implied consent." *Fibro Trust, Inc. v. Brahman Fin., Inc.,* 1999 UT 13, ¶ 8, 974 P.2d 288. However, " 'we grant the trial court a fairly broad measure of discretion in making that determination.' " *Id.* (internal quotation marks omitted) (quoting *Keller v. Southwood N. Med. Pavilion, Inc.,* 959 P.2d 102, 105 (Utah 1998)). Next, in instances where the parties did not try the issues by express or implied consent,

> [t]he trial court's discretion to grant amendment of the pleadings is conditioned on the satisfaction of two preliminary requirements: [1] a finding that the presentation of the merits of the action will be subserved by amendment and [2] a finding that the admission of such evidence would not prejudice the adverse party.... The trial court has only limited discretion in making these preliminary findings....

*Id.* at ¶ 9 (quotations omitted). Finally, if the parties did not try the issues by express or implied consent but the two preliminary requirements have been met, "the trial court has full discretion to allow amendment of the pleadings; that is, it may grant or deny a party's motion for amendment upon any reasonable basis, and the court's decision can be reversed only if abuse of discretion appears." *Id.* (quotations omitted).

¶ 20 Third, the Eldridges contend that the trial court misinterpreted Utah Code section 78–40–2.5, *see* Utah Code Ann. § 78–40–2.5 (Supp.2006), when it determined that the statute mandated the release of the lis pendens. Alternatively, the Eldridges claim that, if the trial court properly interpreted section 78–40–2.5, the application of the statute deprived them of due process. "Questions of statutory interpretation are ...

questions of law that are reviewed 'for correctness, giving no deference to the [trial] court's interpretation.' " *Pearson v. Lamb,* 2005 UT App 383, ¶ 5, 121 P.3d 717 (quoting *Board of Educ. v. Sandy City Corp.,* 2004 UT 37, ¶ 8, 94 P.3d 234). Similarly, whether the interpretation of a statute is unconstitutional is also a question of law, which we review for correctness. *See Duke v. Graham,* 2007 UT 31, ¶ 7, 158 P.3d 540.

■ ¶ 21 Fourth, the Farnsworths cross-appeal the trial court's determination that the lis pendens was not a wrongful lien and its denial of treble damages and attorney fees under the wrongful lien statute. *See* Utah Code Ann. §§ 38–9–1 to –7 (2005 & Supp.2006). Whether a lis pendens, *see* Utah Code Ann. § 78–40–2.5, amounts to a wrongful lien as defined in Utah Code section 38–9–1, *see* Utah Code Ann. § 38–9–1, is a "question of law which we review for correctness, giving no deference to the trial court's legal conclusions," *Russell v. Thomas,* 2000 UT App 82, ¶ 8, 999 P.2d 1244.

■ ¶ 22 Finally, both parties appeal the trial court's orders regarding attorney fees. "Whether attorney fees are recoverable is a question of law, which we review for correctness." *Bonneville Distrib. Co. v. Green River Dev. Assoc.,* 2007 UT App 175, ¶ 19, 578 Utah Adv. Rep. 40, 164 P.3d 433 (quotations omitted).

## ANALYSIS

### I. Summary Judgment [5]

¶ 23 The Eldridges challenge the summary judgment order in favor of the Farnsworths on two separate grounds. First, the Eldridges argue that the trial court improperly concluded that neither specific performance nor money damages were available under a claim for breach of the REPC. Second, the Eldridges contend that the trial court erred in concluding that the Lease Option was unenforceable because the Farnsworths were

---

**5.** As a general challenge, the Eldridges contend that the trial court failed to view the undisputed facts and all reasonable inferences that can be drawn therefrom in a light most favorable to them as the nonmoving party. *See Quaid v. U.S. Healthcare, Inc.,* 2007 UT 27, ¶ 8, 158 P.3d 525

(viewing "facts in the light most favorable to the nonmoving party" on a review of summary judgment). To avoid repetition, we address this contention within the analysis of each substantive challenge to summary judgment.

promissorily estopped from asserting the statute of frauds as a defense.

## A. Recovery Under the REPC

¶ 24 In granting summary judgment on claims for specific performance or damages under the REPC, the trial court made a two-fold determination. First, the trial court concluded that the undisputed facts demonstrated that both parties had abandoned the contract. Second, the court determined that even if the REPC had not been abandoned, the undisputed facts supported the conclusion that both parties materially breached the agreement, thereby precluding specific performance or money damages under the REPC.

■ ¶ 25 "The term 'abandonment' in the sense involved here means the intentional relinquishment of one's rights in the contract; and in order to nullify such rights, there must be a clear and unequivocal showing of such abandonment." *Forsyth v. Pendleton*, 617 P.2d 358, 361 (Utah 1980) (quotations omitted). An intent to abandon "may be inferred from the acts and conduct" of the parties, *id.*, or "from the attendant circumstances," *Parduhn v. Bennett*, 2002 UT 93, ¶ 11, 61 P.3d 982 (quotations omitted). While the question of whether a contract has been abandoned "is usually a question of fact," *Forsyth*, 617 P.2d at 361 (quotations omitted), summary judgment on the issue may still be appropriate where a reasonable jury could only conclude that the contract was abandoned. *Cf. Sanderson v. First Sec. Leasing Co.*, 844 P.2d 303, 306 (Utah 1992) (stating that summary judgment on an issue that is normally a question of fact is appropriate where no reasonable jury could conclude that fact exists).

■ ¶ 26 Here, the trial court properly concluded that, as a matter of law, the parties abandoned the REPC. It is undisputed that after initiating negotiations on the Lease Option, both parties failed to undertake any of the actions required by the REPC, effectively abandoning it.[6] Although the Eldridges argue before this court that the REPC was never abandoned, they specifically advocated for the opposite position before the trial court. In their memorandum in opposition to summary judgment, the Eldridges argued that both parties "waived their right to proceed with the REPC through their words and actions." Furthermore, the Eldridges "special[ly] note[d]" that "between September 20 and November 8 there is no evidence of any interest in the REPC *by either party*." (Emphasis in original.)

■ ¶ 27 Moreover, it is undisputed that both parties undertook acts inconsistent with the continued existence of the REPC. The Eldridges cancelled their application for conventional financing with Washington Mutual, did not apply for any other financing, and made no tender or demand before the REPC's closing date of October 24, 2004.[7] The Farnsworths also engaged in acts inconsistent with the existence of the REPC when they failed to provide the seller disclosures or title commitments required under the contract and canceled the closing scheduled for October 24, 2004.[8] Because these acts are viewed in conjunction with the Eldridges' clear and unequivocal statements that neither party showed any interest in the REPC

---

6. The Eldridges argue that the trial court failed to view in their favor the fact that they had the financial ability to purchase under the REPC. However, even accepting that as true, summary judgment was still appropriate on the ground that the parties abandoned the REPC.

7. The letter from the Eldridges' counsel is not a valid tender. *See PDQ Lube Ctr., Inc. v. Huber*, 949 P.2d 792, 801 (Utah Ct.App.1997) (holding that where conditions set by lender on negotiation of check were not removed by REPC deadline, tender was not timely); *Carr v. Enoch Smith Co.*, 781 P.2d 1292, 1294 (Utah Ct.App.1989) ("In order to have a valid tender, there must be a 'bona fide, unconditional, offer of payment of the amount of money due, coupled with an actual production of the money or its equivalent.'" (quoting *Zion's Props., Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975))).

8. The fact that the Eldridges made no complaint when they learned that the Farnsworths had canceled the closing for the REPC also supports the trial court's ruling that the parties abandoned the REPC. *See Reynolds v. Van Wagoner*, 592 P.2d 593, 594 (Utah 1979) ("[A] contract will be treated as abandoned where the acts of one party, inconsistent with the existence of the contract, are acquiesced in by the other party." (alterations and quotations omitted)).

between September 20 and November 8, and that both parties "waived their right to proceed with the REPC through their words and actions," we hold that the trial court correctly granted summary judgment on the ground that the REPC had been abandoned.[9] *See Budge v. Barron,* 51 Utah 234, 169 P. 745, 748 (1917) (holding contract for sale of land was abandoned where claimant admitted to acts of abandonment). Because the trial court correctly concluded that the parties abandoned the REPC, we also affirm the trial court's determination that the Eldridges are not entitled to specific performance of the REPC or recovery of damages for its breach.

## B. Promissory Estoppel Claim Barred by Statute of Frauds

■■■ ¶ 28 Next, the Eldridges contend that the trial court erred by concluding that the statute of frauds barred their claim for specific performance of the Lease Option. Specifically, the Eldridges argue that the REPC was a binding written contract satisfying the statute of frauds and that the Lease Option was an oral modification of the REPC. The Eldridges reason, therefore, that they are entitled to specific performance of the Lease Option under a theory of promissory estoppel. We disagree.

■■■ ¶ 29 Utah's statute of frauds provides, in relevant part, as follows:

Every contract for the leasing for a longer period than one year, or for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing.

Utah Code Ann. § 25–5–3 (1998). Furthermore, "[t]he rule is well settled in Utah that if the original agreement is within the statute of frauds, a subsequent agreement that modifies any of the material parts of the original must also satisfy the statute." *Allen v. Kingdon,* 723 P.2d 394, 396 (Utah 1986); *see also R.T. Nielson Co. v. Cook,* 2002 UT 11, ¶ 13 n. 4, 40 P.3d 1119. Thus, because both initial contracts and modifications to existing contracts for the sale of land fall within the statute of frauds, it matters not whether the Lease Option is viewed as an independent contract between the parties or as an oral modification to the REPC.

■■■ ¶ 30 We begin by noting that it is undisputed that the Lease Option was never signed by the Farnsworths, the party against whom the Eldridges attempt to enforce the agreement.[10] Therefore, the Lease Option would typically be unenforceable under the statute of frauds. *See* Utah Code Ann. § 25–5–3. Despite this general rule, the Eldridges contend that the doctrine of promissory estoppel prevents the Farnsworths from asserting the statute of frauds as a defense.[11]

---

9. We also agree with the trial court that, even if the parties had not abandoned the contract, the Eldridges could still not seek specific performance or damages under the REPC due to their own failure to make a timely tender. *See Kelley v. Leucadia Fin. Corp.,* 846 P.2d 1238, 1243 (Utah 1992) ("Neither party to an agreement can be said to be in default (and thus susceptible to a judgment for damages or a decree of specific performance) until the other party has tendered his own performance." (quotations omitted)). Even if the Eldridges' letter from counsel had been sufficient, it was untimely. The REPC contained a time is of the essence provision; there was no discussion of, let alone an agreement, extending the time for performance; and the letter was not sent before the October 24, 2004 deadline. *Cf. id.* at 1244 (holding tender was proper where parties mutually agreed to deadline extension and plaintiff tendered performance by that date).

10. The Eldridges contend that, when all the facts and the reasonable inferences drawn therefrom are viewed in their favor, it is reasonable to believe that the Farnsworths did sign at least one of the drafts of the Lease Option and then later destroyed it. We disagree. The Farnsworths testified that they never executed the Lease Option and Ty admitted under oath that the Farnsworths neither signed and returned the Lease Option nor reached an agreement on all of its terms.

11. To succeed on a claim for promissory estoppel a plaintiff is normally required to show that:

(1) [t]he plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was

However, promissory estoppel can be used, only in very rare circumstances, to avoid the statute of frauds. *See Fericks v. Lucy Ann Soffe Trust,* 2004 UT 85, ¶ 14, 100 P.3d 1200 ("[T]he doctrine of promissory estoppel has been extended, in a limited form, to those cases concerned with the statute of frauds." (alterations and quotations omitted)).

■■■ ¶ 31 "[T]o establish the promissory estoppel exception to the statute of frauds, '[t]he acts and conduct of the [defendant] must so clearly manifest an intention that he will not assert the statute that to permit him to do so would be to work a fraud upon the other party.'" *Id.* (second alteration in original) (quoting *McKinnon v. Corporation of Pres. of Church of Jesus Christ of Latter–Day Saints,* 529 P.2d 434, 437 (Utah 1974)). Specifically, "[i]n situations involving the purchase or lease of real property, .... [a] defendant is estopped from asserting the statute of frauds as a defense only when he or she has expressly and unambiguously waived the right to do so." *Stangl v. Ernst Home Ctr., Inc.,* 948 P.2d 356, 360–61 (Utah Ct.App.1997).

¶ 32 In this instance, the undisputed facts support the trial court's conclusion that the Farnsworths never waived their right to assert the statute of frauds as a defense.[12] Even viewing the undisputed facts in the light most favorable to the Eldridges, the most that can be said is that the Farnsworths promised to execute the Lease Option and then later refused to do so. These actions cannot support a finding of promissory estoppel. *See McKinnon,* 529 P.2d at 436–37 (holding that a promise to execute a written memorandum and a subsequent failure to do so is insufficient to support a claim of promissory estoppel); *Easton v. Wycoff,* 4 Utah 2d 386, 295 P.2d 332, 335 (1956) (same); *Ravarino v. Price,* 123 Utah 559, 260 P.2d 570 (1953) (same); *Stangl,* 948 P.2d at 365

(same). Furthermore, the parties expressly contemplated executing a written Lease Option if they could come to agreement on its terms. *See Stangl,* 948 P.2d at 365 (noting that reliance was unfounded where parties anticipated executing written lease and plaintiff had "gambled" that negotiations would be successful). We, therefore, affirm the trial court's determination that the Eldridges' promissory estoppel claim is insufficient, as a matter of law, to overcome the statute of frauds. Consequently, the Lease Option is unenforceable and no recovery, either in the form of specific performance or damages, is available.

■ ¶ 33 Finally, the Eldridges argue that the trial court erred when it failed to consider their theory of breach of the covenant of good faith and fair dealing (Breach of Good Faith). We do not address this issue, however, because it was not before the trial court at the time it granted summary judgment. Neither the First Amended Complaint nor the Second Amended Complaint, which were the subjects of the summary judgment motion, stated a cause of action for Breach of Good Faith. Furthermore, the Eldridges failed to rely on Breach of Good Faith to defeat summary judgment. While we recognize that the Eldridges did briefly raise the issue in their Plaintiff's Motion to Reconsider, the motion failed to explain why a Breach of Good Faith precluded summary judgment on the claims for promissory estoppel, waiver, and fraud. Instead, the Eldridges' motion attempted to raise, for the first time, a claim for Breach of Good Faith without including a discussion of the evidence or facts supporting the claim or a development of legal authority. Thus, the issue was not properly raised with respect to the summary judgment motion and was instead waived. *See R.T. Nielson Co.,* 2002 UT 11 at ¶ 12, 40

---

aware of all material facts; and (4) the plaintiff relied on the promise and reliance resulted in a loss to the plaintiff.
*Youngblood v. Auto–Owners Ins. Co.,* 2007 UT 28, ¶ 16, 158 P.3d 1088 (quotations omitted).

12. The Eldridges argue that the Farnsworths waiver of their rights under the REPC supports their claim to enforce the Lease Option. The Eldridges misapprehend the promissory estoppel exception to the statute of frauds. The question is not whether the Farnsworths waived one of their many existing rights. Rather the proper inquiry focuses on whether they clearly, expressly, and unambiguously waived their right to assert the statute of frauds as a defense in an action seeking to enforce the oral agreement. *See Fericks v. Lucy Ann Soffe Trust,* 2004 UT 85, ¶ 14, 100 P.3d 1200; *Stangl v. Ernst Home Ctr., Inc.,* 948 P.2d 356, 360–61 (Utah Ct.App.1997).

P.3d 1119 (holding that issue was not preserved for purposes of appellate review where it was raised at a different time and "without any supporting evidence or relevant legal authority").

¶ 34 In summation, the trial court properly granted summary judgment in favor of the Farnsworths. First, the trial court correctly concluded that no recovery was available under the REPC because the undisputed facts, in particular Ty's admissions, support only one conclusion—that the parties abandoned the contract. Second, the Lease Option is unenforceable under the statute of frauds, and the undisputed facts cannot support the Eldridges' claim for promissory estoppel.

## II. Amending the Complaint

¶ 35 The Eldridges contend that the trial court erred when it denied their motion to amend the complaint to conform to the evidence under Utah Rule of Civil Procedure 15(b), *see* Utah R. Civ. P. 15(b). Assuming, without deciding, that rule 15(b) applies to conform the pleadings to evidence produced on summary judgment, and not merely to evidence produced at trial,[13] we hold that the trial court properly denied the motion to amend.

¶ 36 Rule 15(b) provides two situations in which a party may seek to amend the pleadings to conform to the evidence. The first situation—the mandatory amendment— requires the trial court to allow amendment of the pleadings if the parties tried the issues by express or implied consent. *See* Utah R. Civ. P. 15(b) ("When issues not raised by the pleading are tried by express or implied consent of the parties, they *shall* be treated in all respects as if they had been raised in the pleadings." (emphasis added)); *see also Fibro Trust, Inc. v. Brahman Fin., Inc.*, 1999

UT 13, ¶ 8, 974 P.2d 288. Furthermore, "[e]xpress or implied consent of the parties must be evident from the record." *Archuleta v. Hughes*, 969 P.2d 409, 412 (Utah 1998) (quotations omitted).

¶ 37 The second situation—the permissive amendment—applies where the parties did not try the issue by express or implied consent. *See* Utah R. Civ. P. 15(b) ("If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court *may* allow the pleadings to be amended . . . ." (emphasis added)). Where the parties did not consent to a trial of the issues, the court may still allow amendment to conform to the evidence if two requirements are met. *See Fibro Trust, Inc.*, 1999 UT 13 at ¶ 9, 974 P.2d 288. First, the trial court must find that "the presentation of the merits of the action will be subserved thereby." Utah R. Civ. P. 15(b). Second, it must determine "that the admission of such evidence would [not] prejudice" the adverse party. *Id.; see also Fibro Trust, Inc.*, 1999 UT 13 at ¶ 9, 974 P.2d 288.

¶ 38 The Eldridges argue that the trial court was required to grant their motion to amend because the parties had tried the issues by express or implied consent. We disagree. A review of the record reveals that the Farnsworths clearly objected to the Eldridges' introduction of new claims whenever they arose. For example, the Eldridges first attempted to raise a claim for Breach of Good Faith in their Memorandum in Support of Plaintiffs' Motion to Reconsider. The Farnsworths specifically objected to the introduction of that claim, stating "[the Eldridges] are initiating a new claim that is not a part of their complaint, and it should not be considered." The Farnsworths made similar objections to the Eldridges' attempts to introduce claims for misrepresentation and

---

13. *See Hallstrom v. Buhler*, 14 Utah 2d 111, 378 P.2d 355, 357–58 (1963) (relying on rule 15(b) to affirm recovery on issue outside the pleadings, but disposed of on summary judgment). *But see England v. Horbach*, 944 P.2d 340, 345 (Utah 1997) (noting that second half of rule 15(b) analysis only comes into play "[i]f evidence is objected to at *trial*" (emphasis added) (alteration in original) (quotations omitted)); *Ahmad v. Furlong*, 435 F.3d 1196, 1203 n. 1 (10th Cir.2006) (citing cases evidencing a split among the federal circuits on the issue of whether the analogous federal rule applies in the context of a summary judgment); *Domar Ocean Transp. v. Independent Refining Co.*, 783 F.2d 1185, 1188 (5th Cir.1986) (noting rule 15(b)'s limited applicability to issues presented "at trial" (quotations omitted)), *quoted with approval in Archuleta v. Hughes*, 969 P.2d 409, 413 (Utah 1998) *and Keller v. Southwood N. Med. Pavilion, Inc.*, 959 P.2d 102, 105 (Utah 1998).

breach of contract. Because the Farnsworths diligently objected to the introduction of matters outside the complaint, we conclude that the trial court correctly determined that the parties did not "try" the issues by express or implied consent.[14] *See Fibro Trust, Inc.,* 1999 UT 13 at ¶¶ 10–11, 974 P.2d 288 (holding that issue was not tried by express or implied consent where adverse party diligently objected to the introduction of the issues); *Archuleta,* 969 P.2d at 412–13 (holding that party does not try issues by consent by a mere mention of the issue).

■ ¶ 39 Because we hold that the trial court was not required to permit amendment, we now turn to the second prong of the rule 15(b) analysis. Even assuming, without deciding, that the presentation of the merits of the action would have been subserved by the amendment and that the Farnsworths would not have been prejudiced, *see Fibro Trust, Inc.,* 1999 UT 13 at ¶ 9, 974 P.2d 288 (outlining conditions precedent to trial court's discretionary allowance of amendment under rule 15(b)), we hold that the trial court did not exceed its broad discretion in denying the Eldridges' third motion to amend.

■ ¶ 40 Under the permissive prong of the rule 15(b) analysis, we will reverse the trial court's denial of a motion to amend only where there is "no reasonable basis" for its decision. *England v. Horbach,* 944 P.2d 340, 345 (Utah 1997) (quotations omitted); *see also Fibro Trust, Inc.,* 1999 UT 13 at ¶ 9, 974 P.2d 288 (stating that "the trial court … may grant or deny a party's motion for amendment upon any reasonable basis" (quotations omitted)). Here, the trial court relied upon several reasonable and well-articulated bases for denying the Eldridges' motion to amend. First, the Eldridges' motion to amend failed to offer any explanation why the new claims were not included in earlier pleadings. *See Kelly v. Hard Money Funding, Inc.,* 2004 UT App 44, ¶ 38, 87 P.3d 734 (noting that it is appropriate to weigh "the reasons offered by the moving party for not including the facts or allegations in the original complaint"). Second, the Eldridges' mo-

tion to amend was untimely in that it was entered more than ten months after the close of fact discovery, two months after all the Eldridges' claims had been disposed of on summary judgment, and well after the tentative dates scheduled for trial. *See England,* 944 P.2d at 343 (indicating that trial court may look to timeliness in making a rule 15(b) decision under the permissive prong of the analysis); *cf. Kelly,* 2004 UT App 44 at ¶¶ 29–30, 87 P.3d 734 ("[M]otions to amend are typically deemed untimely when they are filed in the advanced procedural stages of the litigation process, such as after the completion of discovery…."). Third, given the tardiness of the motion and the Farnsworths' diligent objections to matters outside the pleadings, it would be unjust to allow the Eldridges to amend the complaint in an attempt to further refine their strategy. *See L.A. Young Sons Constr. Co. v. County of Tooele,* 575 P.2d 1034, 1040 (Utah 1978) (holding it was within the trial court's discretion to deny amendment where plaintiff's "amended complaint attempted to modify the entire course of the proceedings"). We agree with the trial court that rule 15(b) does not allow a party to test the sufficiency of their claims by summary judgment and then to "shift to new theories" of recovery after summary judgment has been granted "hoping that one such theory will lead the [c]ourt to find in their favor." *See id.* Finally, the trial court correctly noted that amending the complaint to add a claim for breach of contract would have been futile because the parties had abandoned the REPC, and that the Lease Option was unenforceable. Therefore, we affirm its decision to deny the motion to amend the complaint.

### III. Release of the Lis Pendens

¶ 41 The Eldridges contend that the trial court improperly granted the Farnsworths' motion to release the lis pendens. Or, in the alternative, that the lis pendens statute violates their right to due process under the Fourteenth Amendment. We disagree with both contentions.

---

14. Although we use the terms "try" or "tried" in the rule 15(b) analysis, we do not intend to render any opinion as to whether an issue is ever tried for purposes of rule 15(b) in the context of a summary judgment motion. *See* Paragraph 35 n. 13 and sources cited therein.

¶ 42 Section 78–40–2 of the Utah Code allows a party to record a lis pendens, or notice of the pendency of an "action affecting the title to, or the right to possession of, real property, . . . at the time of filing the complaint or thereafter." Utah Code Ann. § 78–40–2 (2002). Conversely, once it has been recorded, section 78–40–2.5 governs the procedure by which an interested party can secure a mandatory release of the lis pendens. *See* Utah Code Ann. § 78–40–2.5(2) (providing that "[a]ny time after a [lis pendens] has been recorded," a party to the action or a person with an interest in the real property affected by the lis pendens "may make a motion to the court . . . to release the [lis pendens]"). The statute provides that "[a] court *shall* order a [lis pendens] released if: (a) the court receives a motion to release . . . ; and (b) the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim that is the subject of the [lis pendens]." Utah Code Ann. § 78–40–2.5(3) (emphasis added). Once a lis pendens has been released pursuant to section 78–40–2.5(3), the claimant is barred from "record[ing] another notice with respect to the same property without approval of the court in which the action is pending." Utah Code Ann. § 78–40–2.5(4).

¶ 43 The Eldridges argue that the timing provisions of sections 78–40–2 and 78–40–2.5 are inconsistent with one another and that the trial court erred by denying their request to leave the lis pendens in place during this appeal.[15] Specifically, they assert that because section 78–40–2 allows a party to record a lis pendens at any time after the complaint has been filed, it is in irreconcil-

able conflict with section 2.5(4), which bars a party from re-recording a lis pendens previously released by court order without the court's permission. We disagree.

¶ 44 When we read sections 78–40–2 and 78–40–2.5 together, as we must, *see Utah State Tax Comm'n v. Stevenson,* 2006 UT 84, ¶ 32, 150 P.3d 521, it is clear from the plain language of the statute that section 78–40–2 applies from the time the complaint is filed until a lis pendens is initially recorded, and section 78–40–2.5 applies after that point in time. *See* Utah Code Ann. §§ 78–40–2, –2.5. As noted above, a party may first record a lis pendens at any time after filing the complaint. *See* Utah Code Ann. § 78–40–2. "Any time after" the initial lis pendens is filed, "any party to the action[ ] or a person with an interest in the real property" "may make a motion" to release it. Utah Code Ann. § 78–40–2.5(2). If the trial court determines that release is appropriate, then "the claimant may not record another notice with respect to the same property without approval of the court." Utah Code Ann. § 78–40–2.5(4). We find nothing inconsistent in the operation of these provisions.

¶ 45 The Eldridges argue that when sections 78–40–2 and –2.5 are interpreted in this way, the mandatory release of the lis pendens and the subsequent hurdles to re-record and maintain a lis pendens through the appellate process denies them their right to procedural due process. Again, we disagree. According to the Eldridges, the lis pendens is a constitutionally protected property right, and the trial court's order to release it constitutes state action for purposes of the Fourteenth Amendment.[16] They conclude, therefore, that they did not

15. Although the lis pendens is still in place, the Eldridges were required to file a supersedeas bond to stay execution of the trial court's order that it be removed.

16. For purposes of the procedural due process analysis, we accept, without deciding, the Eldridges' argument that a lis pendens represents a constitutionally recognized property interest. *But see, e.g., Connecticut v. Doehr,* 501 U.S. 1, 29, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991) (Rehnquist, C.J., concurring) ("[T]he effect of the lis pendens is simply to give notice to the world of the remedy being sought in the lawsuit itself. The lis pendens creates no additional right in the prop-

erty on the part of the plaintiff . . . ."); *cf., e.g., United States v. Register,* 182 F.3d 820, 836–37 (11th Cir.1999) (holding that the filing of a lis pendens does not constitute a seizure for purposes of the Fourteenth Amendment); *United States v. One 1997 E35 Ford Van,* 50 F.Supp.2d 789, 808 (N.D.Ill.1999) (same); *United States v. 429 S. Main St.,* 906 F.Supp. 1155, 1158–59 (S.D.Ohio 1995) (same); *Batey v. Digirolamo,* 418 F.Supp. 695, 697 (D.Haw.1976) (same). Similarly, we assume, without deciding, that the trial court's order to release the lis pendens constitutes sufficient state action to implicate the Fourteenth Amendment.

receive sufficient procedural protections before the trial court ordered the release of the lis pendens. However, the Eldridges did receive a number of procedural protections including a pre-deprivation hearing before a state court judge where they were represented by counsel. Furthermore, both the statute itself and the Utah Rules of Civil Procedure allow a party to keep the lis pendens in place during the appeal process provided certain conditions are met. *See* Utah Code Ann. § 78–40–2.5(5) (providing that the trial court may require a guarantee as a condition of maintaining a lis pendens, even in the presence of a motion for release); Utah R. Civ. P. 62(d) (allowing for stay where appealing party posts a bond). Under these circumstances, we reject the Eldridges' claim that their right to procedural due process was infringed when, prior to the release of the lis pendens, they were denied a right to appellate review of the trial court's order under section 78–40–2.5(3). "The hallmarks of due process are notice and an opportunity to be heard, but not all proceedings demand the same level of process." *Utah County v. Ivie,* 2006 UT 33, ¶ 22, 137 P.3d 797 (citing *Mathews v. Eldridge,* 424 U.S. 319, 334, 348–49, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

### IV. Lis Pendens as a Wrongful Lien

¶ 46 In their cross-appeal, the Farnsworths argue that the trial court erred when it failed to award them treble damages, attorney fees, and costs under the wrongful lien statute, *see* Utah Code Ann. §§ 38–9–1 to –7. Section 38–9–4 governs the civil liabilities imposed on claimants who record a wrongful lien against real property. Under that section, there are three levels of civil sanctions. First, if a claimant "records or files ... a wrongful lien as defined in Section 38–9–1 ... against real property" she becomes "liable to a record interest holder for any actual damages proximately caused by the wrongful lien." Utah Code Ann. § 38–9–4(1) (Supp.2006). Next, if a claimant who has recorded a wrongful lien "refuses to release or correct the wrongful lien within ten days from the date of written request from a record interest holder ...," the person is liable ... for $1,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs."

Utah Code Ann. § 38–9–4(2). Finally, a claimant who has filed a wrongful lien "is liable to the record owner ... for $3,000 or for treble actual damages, whichever is greater, and for reasonable attorney fees and costs," if at the time he recorded the wrongful lien he knew or had reason to know that the document was "a wrongful lien," was "groundless," or "contain[ed] a material misstatement or false claim." Utah Code Ann. § 38–9–4(3).

¶ 47 The Farnsworths contend that the initial filing of the lis pendens was in bad faith which alone qualifies it as a wrongful lien. They also argue that, even if the initial recording did not constitute a wrongful lien, it became wrongful following the trial court's determination in its ruling dissolving the TRO that the Eldridges were not likely to succeed on the merits of their claims. Because the Farnsworths sent a letter demanding that the Eldridges release the lis pendens following that order, they claim they are entitled to treble damages, attorney fees, and costs under Utah Code section 38–9–4. The interplay between the wrongful lien statute, *see* Utah Code Ann. §§ 38–9–1 to –7, and the statute authorizing a party to record a lis pendens against real property, *see* Utah Code Ann. § 78–40–2, does not support the Farnsworths' arguments.

¶ 48 Before a property owner may recover under the civil liability provisions of the wrongful lien statute, she must first show that the lien was wrongful. By statute, a "wrongful lien" is:

> any document that purports to create a lien or encumbrance on an owner's interest in certain real property and *at the time it is recorded or filed* is not:
>
> (a) expressly authorized by ... state or federal statute;
>
> (b) authorized by or contained in an order or judgment of a court of competent jurisdiction in the state; or
>
> (c) signed by or authorized pursuant to a document signed by the owner of the real property.

Utah Code Ann. § 38–9–1(6) (2005) (emphasis added). It is undisputed that neither subsection (b) or (c) of section 38–9–1(6) ap-

ply in this instance. Thus, the issue is whether "at the time [the lis pendens wa]s recorded" it was "expressly authorized by ... state or federal statute" and therefore outside the definition of a "wrongful lien." Utah Code Ann. § 38–9–1(6)(a). Furthermore, section 38–9–2(2) expressly provides that "[t]he provisions of this chapter shall not prevent a person from filing a lis pendens in accordance with section 78–40–2 . . . ." Utah Code Ann. § 38–9–2(2) (2005).

¶ 49 As discussed above, the lis pendens here was specifically authorized by Utah Code section 78–40–2. That section requires only that (1) there be an action pending, (2) "affecting the title to, or the right of possession of, real property." Utah Code Ann. § 78–40–2; *see also Winters v. Schulman*, 1999 UT App 119, ¶¶ 18–22, 977 P.2d 1218 (evaluating validity of lis pendens by compliance with statutory requirements). The Farnsworths have not alleged that these two statutory requirements were not met. Instead, they urge this court to adopt the approach used by a Florida court which looked to the merits of the claims to determine if they "constitute[d] good faith, viable claim[s]" capable of supporting a lis pendens. *See India Am. Trading Co. v. White*, 896 So.2d 859, 860 (Fla.Dist.Ct.App.2005). Under the Florida approach, a lis pendens may amount to a wrongful lien if the claims in the complaint are later determined to be without merit. *See id.*

¶ 50 We reject the Florida approach because it would add an element not found in the plain language of section 38–9–1. *See Utah State Tax Comm'n v. Stevenson*, 2006 UT 84, ¶ 32, 150 P.3d 521 (interpreting plain language in light of related statutes). Section 38–9–1 requires a court to determine whether a lien is wrongful by evaluating it "at the time it is recorded or filed." Utah Code Ann. § 38–9–1. Therefore, when evaluating the Eldridges' lis pendens, the trial court was required to evaluate its validity based on the facts known at the time it was recorded, not at a later point in time after evaluating the merits. Furthermore, we have previously held that it is proper to restrict review to the face of the complaint when determining the validity of a lis pendens. *See Winters*, 1999 UT App 119 at ¶ 19,

977 P.2d 1218 (reviewing validity of lis pendens by examining the allegations and timing of the complaint and noting that "[i]n determining the validity of a lis pendens, courts have generally restricted their review to the face of the complaint" (quotations omitted)). It would thus be inconsistent with both section 38–9–1 and Utah case law to look beyond the face of the complaint when filed to determine that the lis pendens amounted to a wrongful lien. Therefore, we affirm the trial court's ruling that the lis pendens did not constitute a wrongful lien and that the Farnsworths are not entitled to treble damages, attorney fees, or costs.

## V. Attorney Fees

¶ 51 Finally, the Farnsworths argue that the trial court erred in denying their motion for attorney fees as provided for in the REPC. "In Utah, attorney fees are awarded only if authorized by statute or contract. If provided for by contract, attorney fees are awarded in accordance with the terms of the contract." *Panos v. Olsen & Assocs. Constr., Inc.*, 2005 UT App 446, ¶ 22, 123 P.3d 816 (quotations omitted). The Farnsworths rely on paragraph 17 of the REPC for their contractual claim to attorney fees which states: "In the event of litigation . . . to enforce the [c]ontract, the prevailing party shall be entitled to costs and reasonable attorney fees." Despite this contractual provision, the Farnsworths claim for attorney fees fails because the REPC was abandoned by both parties rendering all of its provisions, including the attorney fees provision, a nullity.

¶ 52 The Utah Supreme Court has noted that where "it is found that there was an abandonment [of the contract], then [the] plaintiff's entitlement to attorney[ ] fees is rendered moot. If it is concluded that there was no abandonment, then the contract is still in force and the contractual provisions which pertain to attorney[ ] fees apply." *Forsyth v. Pendleton*, 617 P.2d 358, 362 (Utah 1980); *see also BLT Inv. Co. v. Snow*, 586 P.2d 456, 458 (Utah 1978) (holding that a party may not avoid a contract by arguing that it is unenforceable and, "at the same time, claim the benefit of the provision for

attorney fees" (quotations omitted)). Thus, because we affirm the trial court's conclusion that, as a matter of law, the REPC was abandoned by the mutual intent of both parties, we also affirm the trial court's determination that the Farnsworths are not entitled to attorney fees under the REPC.

## CONCLUSION

¶ 53 In sum, we conclude that the Eldridges are not entitled to either specific performance or damages arising out of breach of the REPC or the Lease Option. The REPC was abandoned by both parties, and therefore, cannot support a claim for breach. The Farnsworths were not promissorily estopped from asserting the statute of frauds as a defense against the claims arising out of the Lease Option because they never unequivocally waived their right to do so. The trial court did not exceed its discretion in denying the Eldridges' rule 15(b) motion to amend the complaint, for a third time. We also find that the trial court correctly ordered the release of the lis pendens under Utah Code section 78–40–2.5 and that the Eldridges were not denied procedural due process by the application of that section. Furthermore, the trial court properly determined that the lis pendens was not a wrongful lien because at the time it was recorded there was an action pending involving title to, or the right to possession of, the Ranch. Finally, because the parties abandoned the REPC, neither party is entitled to attorney fees under that contract.

¶ 54 Affirmed.

¶ 55 I CONCUR: GREGORY K. ORME, Judge.

¶ 56 I CONCUR, EXCEPT THAT AS TO SECTION II, I CONCUR ONLY IN THE RESULT: JAMES Z. DAVIS, Judge.